HALL, Judge.
This is a concursus proceeding wherein Waguespack Pratt, Inc. deposited the sum of $48,522.84 in the registry of the court and impleaded Mrs. Anna Burglass Dunker and Mrs. Tess M. Crager, in her capacity as Executrix of the Succession of Robert L. Crager, requiring them to assert their claims to the amount deposited and to be hereafter deposited in the registry of the court.
Waguespack Pratt, Inc. is a licensed real estate broker domiciled in the City of New Orleans and is the successor of Wagues-pack Pratt, Co. which was the trade name under which F. Poche Waguespack, as sole owner, conducted a real estate business from 1946 until December 27, 1955 on which date he incorporated his business.
The $48,522.84 deposited by petitioner in the registry of the court represents the cu-mulation to the date of the petition of the listing and leasing commissions due petitioner’s associated salesmen or agents in connection with 16 certain commercial leases (listed on the schedule attached to the petition) which had been secured by the Waguespack office from businesses locating in the “West Side Shopping Center.”
Each defendant answered claiming the entire amount deposited and to be deposited. Mrs. Crager, in addition, reconvened praying for interest on all commissions earned by Robert L. Crager from the dates they became payable. The reconventional demand was dismissed by the Trial Court on exceptions filed by Waguespack.
From time to time as rentals were paid on the 16 leases, Waguespack deposited additional sums in the registry of the court representing listing and leasing commissions due thereon to its salesmen and agents. As of the date of the trial the total on deposit amounted to the sum of $55,050.52.
Following trial on the merits the District Judge awarded $3,852:32 to Mrs. Anna Burglass Dunker and awarded the balance of the amount in the registry of the court, being the sum of $51,198.20, to Tess M. Crager, Executrix of the Succession of Robert L. Crager, and ordered the costs of Waguespack Pratt, Inc. to be borne by the defendants in proportion to the amounts received by them and decreed that the defendants bear their own respective costs. The judgment was silent as to the future listing and leasing commissions accruing from the 16 leases.
Both defendants appealed. Waguespack Pratt, Inc. answered the appeals praying that the judgment be affirmed insofar as it awards costs to it and that the judgment be amended so as to provide for the distribution of the future listing and leasing fees becoming payable to salespersons from said 16 leases until the termination of said leases.
The pertinent facts are as follows :
Mrs. Dunker and Robert L. Crager became associated with Waguespack Pratt, Co. as salespersons about the year 1951. Mrs. Dunker remained with the company *271 until the fall of 1955. Mr. Crager died December 31, 1957, while still associated with the Waguespack office. They received no salaries. Their only compensation came from commissions earned.
In 1951 or 1952 Waguespack Pratt, Co. became interested in developing a shopping center when it learned of the possibility of Maison Blanche (City Stores Company) opening a branch store on the West Bank of the River. Mr. Waguespack put his salesmen to work in an effort to find some land on the West Bank that might be suitable. A new highway on the West Bank had been proposed and land on this highway would be an ideal place to locate a shopping center.
Mrs. Dunker was well acquainted with Senator Alvin T. Stumpf who owned, together with his nephew, Dr. J. F. Stumpf, a long narrow strip of land which had been subdivided into lots for sale. Through her friendship with Senator Stumpf Mrs. Dunker acquired some maps from him showing the proposed location of the new highway. These maps indicated that the highway would pass through part of the land owned by Senator Stumpf and his nephew.
Mrs. Dunker brought the maps to Mr. Waguespack and gave him information regarding the availability of the Stumpf property for lease for a shopping center. Mrs. Dunker never at any time procured a written listing of the property from the Stumpfs. Neither did Mr. Crager. As a matter of fact although they did business together Waguespack Pratt, Co. never procured an unconditional written listing agreement from the Stumpfs prior to June 14, 1957.
The maps and the information given to Mr. Waguespack by Mrs. Dunker was what is known in the trade as an “information” or “memorandum” listing.
As a general rule no commissions were paid by Waguespack Pratt, Co. on “information listings.” This rule, however, was relaxed in certain cases.
Salesmen associated with Waguespack Pratt, Co. were remunerated on the following basis:
1) A salesman who procured a written listing of property for sale or lease was paid 10% of the commission received by Waguespack.
2) A salesman selling or leasing the property was paid 40% of the commission received by Waguespack.
3) A salesman who procured a written listing and also sold or leased the property so listed by him was paid 50% of the commission received by Waguespack, being 10% for the listing and 40% for the sale or lease.
4) In the case of an “information listing” the salesman who sold or leased the property was as a general rule paid both the 10% listing commission and the 40% sale or leasing commission and the salesman who brought in the information was usually paid nothing. However, in some cases, in the sole discretion of Mr. F. Poche Waguespack such salesman was allowed the 10% listing commission or some part thereof.
5) In the event a salesman who had produced an “information listing” severed his connection with Waguespack he was in no case entitled to any commission from Wa-gespack should any subsequent lease or sale result from the information. However, the salesman was entitled to take the information to another realtor’s office provided he had the property owner’s permission.
6) In the case of any dispute between salesmen, F. Poche Waguespack had the sole right and authority to determine the amount of commissions due each.
All that Mrs. Dunker produced in connection with the 16 leases involved herein was the “information listing.” She obtained none of the leases. All of them were secured by Robert L. Crager.
*272 Prior to the date Mrs. Dunker severed her connection with Waguespack Pratt, Co., three leases had been closed by Robert L. Crager viz: the Maison Blanche (City Stores) lease, the National Foods lease, and the Finest Foods lease which were executed respectively on June 29, 1955, September 9, 1955 and September 13, 1955. The remaining 13 leases were secured by Robert L. Crager after her departure.
The listing commissions due to salesmen on the above three leases amounted to the sum of $3,852.32 as of the date of trial and the leasing commissions due thereon amounted to the sum of $8,101.78.
Under the general rule of the Wagues-pack office both the listing commission of $3,852.32 and the leasing commission of $8,101.78 would have been payable to Robert L. Crager since he had closed the three leases and the office had only an “information listing” in connection therewith.
However, Mr. Waguespack, as he had a right in his sole discretion to do, allocated to Mrs. Dunker one-half of the listing fee of $3,852.32 and the other half thereof to Mr. Crager. This allocation was announced to all of the salesmen including Mr. Crager and Mrs. Dunker. Neither Mr. Crager nor Mrs. Dunker made any obj ection to this allocation at the time.
Under the conditions of their employment by Waguespack Pratt, Co., Mrs. Dunker thus became entitled to one-half of the listing commission of $3,852.32 produced by the Maison Blanche (City Stores), National Foods and Finest Foods leases. Mr. Crager became entitled to the other one-half of this listing commission plus the entire leasing commission of $8,-101.78 produced by these three leases. He also became entitled, under the rules of the office, to both the listing commissions and the leasing commissions on the remaining 13 leases involved herein, all of which were closed by him after Mrs. Dunker had severed her connection with the office.
However, a dispute arose over the commissions and on December 31, 1958, Mrs. Dunker filed suit against F. Poche Wa-guespack, Waguespack Pratt, Inc. and Tess M. Crager, as Executrix of the Succession of Robert L. Crager, in which she asserted a claim against F. Poche Waguespack and Waguespack Pratt, Inc. for the full amount of all listing and leasing commissions produced and to be produced from the West Side Shopping Center and asserted in the alternative a claim against the Succession of Robert L. Crager for 50% of the amount of such commissions. This suit which bears the No. 367,749 of the docket of the Civil District Court for the Parish of Orleans was dismissed without prejudice for lack of prosecution.
In her appeal herein, Tess M. Crager, Executrix of the Succession of Robert L. Crager contends that the District Judge erred in awarding Mrs. Dunker any part of the funds on deposit, and prays that the judgment appealed from be amended so as to award the Succession the totality of the funds on deposit together with interest thereon from the date each payment of commissions became due, as prayed for in her reconventional demand, and that the judgment be further amended so as to award the Succession the totality of all future commissions accruing from the 16 leases.
As previously indicated the Trial Judge dismissed appellant, Crager’s, recon-ventional demand praying for interest. We find no reason to discuss whether LSA-C.C.P. 4656 as interpreted by the “Official Revision Comments” prohibits all reconventional demands in concursus proceedings. We are of the opinion that no interest should be allowed on the amount on deposit herein for the reason that the commissions were in dispute and Wagues-pack could not with safety pay the listing and leasing commissions to either party.
Mrs. Dunker tried the matter below and also argued her appeal in proper person.
The main thrust of Mrs. Dunker’s appeal is that the case should be remanded be *273 cause she did not receive a fair trial, in that:
1) The trial was commenced at 9:30 A. M. when the printed notice of trial dated October 1, 1968 received by her stated that the trial was fixed for 10:30 A.M.
2) Some of the witnesses subpoenaed by her did not appear at the trial.
3) Although the record in Civil District Court No. 367,749 and the depositions of F. Poche Waguespack and Senator Alvin Stumpf contained therein were introduced in evidence they were never physically produced in Court nor did the Trial Court ever have an opportunity to examine the depositions.
In his written “Reasons for Judgment” the Trial Judge fully explained his action in starting the trial at 9:30 A.M. as follows :
“It might be well for the Court to make mention of the fact that after a pre-trial of this matter in Chambers on the 1st day of July, 1968 (at which time Mrs. Burglass was personally present as was counsel for the plaintiff and Mrs. Crager), the matter was especially fixed for trial on the 28th day of October, 1968, at 9:30 A.M. (the Court cancelling any pre-trials normally held at that time of day). On or about the 1st day of October, 1968, the notice of the trial of this matter, and the time of such trial (i.e. 9:30 A.M.) was duly posted on the bulletin board outside of the Courtroom. Unfortunately, in sending out a “Notice of Trial” to all parties the notice erroneously stated the time of the trial to be 10:30 A.M. However, on or about the 23rd of October, 1968 Mrs. Burglass requested a continuance of the matter for the reasons set forth in her motions therefor, and the Court, in Mrs. Burglass’s presence, denied such continuance and advised Mrs. Burglass that she must be ready for trial on the 28th day of October at 9:30 A.M. And again, on October 25th, when the Court refused to consolidate another case with the concursus proceedings, the Court advised Mrs. Bur-glass in open Court that she had to be ready for trial on the following Monday morning at 9:30 AM.
“It might be well to also note that all parties, except Mrs. Burglass, were present at 9:30 A.M. on the 28th of October, 1968, at which time the proceedings began. However, between 9:30 and 10:15 A.M., when Mrs. Burglass entered the Courtroom, the only evidence introduced was the numerous telegrams and letters which Mrs. Burglass had sent to the undersigned Judge of this Court, and the attorneys and witnesses, together with some three exhibits identified and introduced by the plaintiff, all of which were shown to Mrs. Burglass upon her arrival, at which time she was given every opportunity to object thereto or to examine the witness in connection therewith, neither of which did she do. On the contrary, she insisted, at a later time, in having the very letters placed in evidence. Therefore, the Court is of the opinion that Mrs. Burglass’s rights were not in any way jeopardized by her failure to appear at 9:30 A.M.”
The record reveals that while some of Mrs. Dunker’s subpoenaed witnesses did not report at the trial she did not request instanter subpoenas for their appearance although given an opportunity to do so.
Mrs. Dunker’s statement that the record in the Civil District Court No. 367,-749 and the depositions therein contained were not physically produced in Court is denied by the other parties to this litigation. Moreover, if they were not physically in Court Mrs. Dunker herself had the right to get them from the Clerk’s office.
We are of the opinion that Mrs. Dunker received a fair trial in all respects and that there is no reason to remand the case.
As well as we can gather Mrs. Dunker claims all of the listing commissions because she was solely responsible for bringing the Stumpf property into the office, and claims the leasing commissions because *274 she was prevented by Mr. F. Poche Wa-guespack from closing any leases. She also contends that she was forced to agree in writing to accept a partial leasing commission in an amount to be fixed by Mr. Waguespack under threat of returning her agent’s license to Baton Rouge.
It is abundantly clear from the record that all Mrs. Dunker brought to the Wa-guespack office was the highway maps and information that the Stumpf property might be suitable and available for a shopping center. Thereafter Mrs. Dunker undertook to call on several prospective lessors long before the plans for the shopping center were set up and was stopped by Mr. Waguespack because her efforts were premature and were interfering with the plans. However it is clear from the record that after the plans for the shopping center were completed every agent associated with Waguespack Pratt, Co., including Mrs. Dunker, was free to negotiate leases therein.
The record is also clear that under the policy and rules of the Waguespack office no commissions were due on “information listings” except in certain cases in the sole discretion of Mr. Waguespack and in such cases Mr. Waguespack was the sole judge of the amount of the commission payable. Mrs. Dunker could not have been coerced into accepting a partial listing commission, when under the general office policy she was not entitled to anything.
Mrs. Dunker produced no written listing. She closed none of the leases. Although she was free when she left Wa-guespack Pratt, Co. to take her “information listing” to another realtor, provided she got the consent of the Stumpfs, she did not do so. In our opinion all that Mrs. Dunker is entitled to is one-half of the listing commission on the Maison Blanche (City Stores), National Foods and Finest Foods leases which was allocated to her by Mr. F. Poche Waguespack. We are of the opinion that the Trial Judge erred in awarding her the whole of such listing commission.
The Succession of Robert L. Crager is entitled to the remainder of the fund in the registry of the court.
For the foregoing reasons the judgment appealed from is amended by reducing the award to Mrs. Anna S. Burglass deSalvo Dunker from the sum of $3,852.32 to the sum of $1,926.16 and by increasing the award to Tess M. Crager, Executrix of the Succession of Robert L. Crager, from the sum of $51,198.20 to the sum of $53,124.36; and by adding to said judgment the following paragraphs:
“It is further ordered, adjudged and decreed that Waguespack Pratt, Inc. be and it is hereby ordered to deposit in the registry of the Civil District Court for the Parish of Orleans, promptly as received by it, 50% of the amounts of all future commissions (except management commissions) received by it resulting from the 16 leases involved in these proceedings, after first deducting from such amounts the court costs, if any, incident to such deposits. In making each such deposit Waguespack Pratt, Inc. shall specifically indicate the amount thereof which is due as listing commissions on the Maison Blanche (City Stores), National Foods and Finest Foods leases.
“It is further ordered, adjudged and decreed that the Clerk of the Civil District Court for the Parish of Orleans be and he is hereby authorized and directed to pay to Mrs. Anna S. Burglass deSalvo Dunker out of the funds so deposited, from time to time as the deposits are made, an amount equal to one-half of the amount of the listing commissions due as indicated by Wa-guespack Pratt, Inc. on the Maison Blanche (City Stores), National Foods and Finest Foods leases; and to pay to Tess M. Crager, Executrix of the Succession of Robert L. Crager, the entire remaining amount of such deposits.”
As so amended and in all other respects the judgment appealed from is affirmed; each party to bear his own costs of appeal.
Amended and affirmed.