HAMITER, Justice.
 

 ‘ In these cases, consolidated in the district .court, the. Whitehall Oil Company, Inc., sought to recover from its lessors under separate oil, gas and mineral leases certain alleged overpayments of gas royalties which it made to the latter. That court rendered judgments for the defendants and dismissed plaintiff’s actions.
 

 The Court of Appeal reversed the single judgment rendered and ordered reimbursement of the amounts claimed by plaintiff at defendants’ costs; but it disallowed interest, except from date of judicial demand. 217 So.2d 707.
 

 We granted certiorari at the instance-of the defendants in the suit entitled Whitehall Oil Company, Inc. v. Boagni et al., 253 La. 731, 219 So.2d 512. The defendants in the other case did not apply for a rehearing in the Court of Appeal or for certiorari here.
 

 The facts are not in dispute and are, .for the most part, contained in a “Joint Stipulations of Fact” which was filed in the record during the trial. These are that on December 13, 1959 the defendants, as lessors, executed an oil, gas and mineral lease in favor of Craft Thompson covering certain lands in St. Landry Parish. It was later acquired by the plaintiff. Following production of gas on the leased property, the Federal Power Commission, on September •13, 1961, granted to plaintiff temporary authority to sell to pipeline customers the .product at a price of 23.25 cents per Mcf. The temporary permit was conditioned on .plaintiff’s being obligated to repay to its
 
 *72
 
 vendees any difference between the price so authorized and the final price established (plus
 
 7%
 
 interest) in the event the latter was fixed lower than the temporary rate.
 

 Plaintiff commenced to sell gas under the Commission’s temporary authority, and it continued to do so until January 23, 1964, at which time a final and permanent authorized price at 20 cents per Mcf was fixed. Thereupon, pursuant to the terms of the initial order, plaintiff refunded to its pipeline purchasers the difference between the temporarily authorized price and that finally established.
 

 During the time that it was selling the gas under the temporary authorization plaintiff paid royalties to the defendants based on the price of 23.25 cents per Mcf. However, they were not notified by plaintiff, and they did not have actual notice, of the refunding provision of such authority until July 23, 1964, at which time the permanent price was established.
 

 Thereafter, demand was made by plaintiff on the defendant royalty owners for their respective portions of the overpayments which plaintiff had refunded to the gas purchasers. The defendants refused to comply, and the instant suit ensued. (Certain of the royalty owners voluntarily remitted the amounts claimed from them.)
 

 Plaintiff asserts herein that under the terms of the leasing agreement it is entitled to the refund, it relying on general equitable principles and particularly on our doctrine of unjust enrichment. Louisiana Revised Civil Code Articles 21, 1964 and 1965. Also cited are the provisions of our Code dealing with “Payment of a Thing Not Due”. Articles 2301 et seq.
 

 In connection with the latter group of provisions plaintiff argues that when an obligation is paid which is due at the time, but which is subject to a resolutory condition, reimbursement may be had on its ex-tinguishment by the happening of such condition. And it urges that the payments to the defendants were made subject thereto, that is, a refund if the price was reduced.
 

 The defendants rely primarily on the general principle said to exist in our law that voluntary payments (not made by mistake or under duress) by a payor who has full and exclusive knowledge of all of the facts surrounding them may not be subsequently recovered even though the amounts so paid are not actually owed. Further, they deny the applicability of the articles cited by plaintiff under the section of our Code dealing with “Payment of A Thing Not Due”. They argue that Articles 2301 and 2302 are not applicable for the reason that the payments were not made to them by mistake (or under duress) ; that, to the contrary, the plaintiff knew all of the facts and circumstances surrounding them; and that, moreover, the payments were due to
 
 *74
 
 the defendants when delivered by virtue of the contractual lease provisions.
 

 Also, defendants contend that Article 2304 is inapplicable, because the payments were not made upon a “supposed” obligation but on one actually existing at the time. And they insist that the latter portion of such article refers to a release before the payments are made, not thereafter.
 

 Defendants likewise argue that even supposing that the happening of a resolutory condition affecting the obligation after payments have been made might form the basis for claiming a refund it must he known to both parties. And they point out that in the instant case they were unaware of the condition.
 

 Counsel on both sides of this litigation have evidenced much diligence and ingenuity in impressing on the court their respective views concerning the applicability of the mentioned Revised Civil Code Articles 2301 et seq. But we do not believe that we need resolve them. Because, even assuming the view most favorable to the defendants, and the one asserted by them (that is, that those articles do not apply), we think that, nevertheless, for the reasons hereafter given plaintiff must prevail herein.
 

 The lease contract, although executed in much detail in many respects, is silent as to the obligations of the parties under the situation here presented. If, then, Revised Civil Code Articles 2301 et seq. relied on by plaintiff, do not apply we are called upon to determine conflicting claims under a contract where there is neither express law nor contractual provisions governing a determination of them. Consequently, in deciding the controversy we must resort to other provisions of our Revised Civil Code, namely: “21 [21]. Equity — Civil matters — No express law.— In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent.
 

 “1964 [1959]. Incidents supplied by equity, usage, and law.- — -Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.
 

 “1965 [I960]. Principles of equity stated —Application.—The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these prin
 
 *76
 
 ciples to determine what ought to he incidents to a contract, which are required by equity.”
 

 Section 8 of the lease agreement, which was introduced into evidence, provides (among other things) that royalties paid to the lessors shall be “ * * * the market value free of cost of production and delivery of
 
 Yz
 
 of the gas so sold or used; * * *#
 

 “In any. case where Lessee sells gas or plant products of his and Lessor’s, Lessor shall receive the same price
 
 and terms
 
 as Lessee. * * * ” (Italics ours.)
 

 Section 26 states: “The requirements hereof shall be subject to any State and/or Federal law or order regulating operations on the land.”
 

 Thus, under the agreement the plaintiff was obligated to sell both its and the lessor’s gas for the same price and
 
 under the same terms
 
 as it sold its own. This it did. Indeed, the order of the Commission made it mandatory that a refund be made to the purchasers in the event of a rate reduction if the gas were sold meanwhile at the temporarily allowed price. But with respect to the defendants we find no obligation on the part of the plaintiff to withhold part of the royalty payments to meet the contingency of a rate reduction, or to escrow any amounts, or to provoke a concursus proceeding for the purpose of determining the legal right to withhold. This is so, if for no other reason, than that the proper amounts to be paid by plaintiff to the defendants
 
 was not known and could not be determined
 
 until such time as the Commission fixed the fair market value in its permanent rate authorization.
 

 • Under the circumstances noted herein above we entertain no doubt but that the defendants would be unjustly enriched at the expense of plaintiff if they are allowed to retain the overpayments. All that they were entitled to was the fair market value as fixed finally by the Commission, albeit the plaintiff was authorized originally to collect a higher price. But this was based on the condition that it refund any excess to the pipeline purchasers. (We observe, incidentally, that the course pursued by plaintiff would have been as beneficial to defendants as to the former had the initial’ rate been ultimately maintained^)
 

 We do not believe that applicable here is the general principle relied on by the defendants, that is, that when one with full knowledge of the circumstances involved voluntarily pays an amount not actually owed he cannot thereafter claim the payment back. This principle is said to exist “because of the stabilizing legal principle preventing payors from disturb
 
 *78
 
 ing the status quo by demanding reimbursement subsequently of payments made by them voluntarily with full knowledge of facts justifying them to withhold or to condition their payment.” In the instant case, the amount paid was not a disputed claim. To the contrary, as asserted by the defendants here, it was owed at the time it was paid (because of the Commission’s order) ; and, as we have pointed out, there was no basis for determining what amount* if any, should be withheld.
 

 The defendants urge, however, that the failure of the plaintiff to notify them that the royalty payments might have to be refunded should now defeat the demand for reimbursement. We do not agree. This contention is based on equitable estoppel pleaded alternatively in the answer. In connection with the plea the defendants allege certain facts and acts performed by them which resulted in their prejudice. But it is elementary that for one to invoke successfully equitable estoppel he must show, among other things, that he acted to his detriment in relying on the acts or declarations of another which form the basis of the plea. Jones v. Williams, 215 La. 1, 39 So.2d 746, Breaux v. Laird, Jr., et al., 230 La. 221, 88 So.2d 33 and American Bank and Trust Company v. Trinity Universal Insurance Company et al., 251 La. 445, 205 So.2d 35.
 

 Conceding arguendo that an estoppel could be applied in a case such as this, there is no evidence whatsoever in the record before us that the defendants have in any way changed their position to their detriment or that they have been placed in a disadvantageous position because of their acceptance of the overpayments. All that is disclosed is that if the plaintiff is successful in this suit the defendants will have to return money to which they were not entitléd and of which they have had the use during the time of the Commission’s deliberations. We fail to see any prejudice to them under these circumstances. (We note that three of the defendants who filed answers separately from the others did not invoke the estoppel. However, in view of our holding on the merits of the others’ plea, we pretermit the question of whether or not it was necessary that they formally do so.)
 

 ■ As a matter of equity and justice we are of the opinion that the plaintiff is entitled to be reimbursed the amounts it was awarded against .the several defendants by the Court of Appeal.
 

 For the .reasons assigned the judgment of the Court of Appeal in the case of Whitehall Oil Company, Inc. v. Boagni et al. is affirmed. The costs of this court are assessed to the defendants.