320 So.2d 354 (1975)
Louis GREGORY et al., Plaintiffs-Appellees,
v.
Sam GUARISCO, Defendant-Appellant, and
Travelers Indemnity Co. et al., Defendants-Appellees.
No. 12671.
Court of Appeal of Louisiana, Second Circuit.
October 1, 1975.
*355 Hal V. Lyons, Shreveport, for appellant.
Mayer, Smith & Roberts, by Jerry Kircus, Shreveport, Blanchard, Walker, O'Quin & Roberts, by Wilton H. Williams, Jr., Shreveport, for appellees.
Before BOLIN, HALL and DENNIS, JJ.
DENNIS, Judge.
On February 27, 1972, at about 10:00 A. M., a fire occurred in the restaurant operated by Sam Guarisco at 3164 North Market Street, Shreveport, Louisiana. The fire originated in a deep fat fryer owned by Guarisco and caused $564.75 in damages to the building which was leased to Guarisco by Louis M. Gregory.
This suit was instituted by Gregory and his fire insurer against Guarisco and his public liability insurer to cover the cost of repairs to the premises. Guarisco denied any negligence in causing the fire and filed a third-party action against his own insurance agent for failure to issue the proper insurance to cover the loss in the event of his liability. The trial court rendered judgment for the plaintiffs against Guarisco but rejected the demands of the plaintiffs and the third party demand of Guarisco against his public liability insurer. Guarisco appealed urging error only as to the judgment on the main demand. Plaintiffs did not appeal, and therefore the judgment below rejecting all demands against Guarisco's public liability insurer is final and cannot be disturbed on appeal.
The deep fat fryer, which was over 8½ years old at the time of the fire, consisted of a receptacle holding vegetable oil in which electric heating elements were submerged. Guarisco had not performed any regular maintenance on the fryer, and had replaced heating elements on prior occasions. The cooker had a thermostat to control the temperature of the oil, but it had never given trouble or been worked on before.
Guarisco was not present at the restaurant on either the night before or the morning of the fire, having left it in the charge of two employees. However, he testified that they would normally cook at a temperature of 350 degrees or less. He stated that he was not positive but that he thought the flash point of the cooking oil was 500 degrees. The normal procedure followed by him and his employees, according to Guarisco, was to set the thermostat at 200 degrees to melt the grease before beginning to cook in the morning. They again turned the temperature down to 200 degrees 30 minutes before quitting time in the evening so that the grease could be safely poured from the receptacle. At night the thermostat was left on 200 degrees but the fryer was completely turned off. In the mornings, since the thermostat was usually still set for 200 degrees from the night before, the fryer was simply switched on in order to warm up. According to Guarisco, the temperature settings on the thermostat ranged from zero to 450 degrees.
The two restaurant employees were not called as witnesses, and Guarisco testified that he did not know where they were. He was certain, however, that the deep fat fryer was under their supervision and control *356 at the time of the fire. The only explanation for the fire given by Guarisco was his own testimony that the thermostat had gone out of control and allowed the fryer to overheat the cooking oil. But this testimony amounted to no more than an assertion or opinion on his part. He did not state how he knew the thermostat had caused the fire. He did not relate any evidentiary facts to support such a determination and merely stated this as an unsupported conclusion.
It is a well-recognized rule of law followed in this state that those who use or handle dangerous agencies, substances or instrumentalities such as explosives, electricity, firearms, combustibles and fireworks, which might endanger persons or property, are held to a high degree or extraordinary degree of care. Waters v. Southern Farm Bureau Casualty Ins. Co., 212 So.2d 487 (La.App., 3d Cir. 1968); Prescott v. Central Contracting Co., 162 La. 885, 111 So. 269 (1927); Normand v. Normand, 65 So.2d 914 (La.App., 2d Cir. 1953); Holland v. St. Paul Mercury Ins. Co., 135 So.2d 145 (La.App., 1st Cir. 1961).
The deep fat fryer, which was capable of boiling combustible cooking oil at a temperature of 450 degrees, was a dangerous instrumentality, and the trial court found that Guarisco and his employees failed to use or handle it with a high degree or an extraordinary degree of care, after applying the doctrine of res ipsa loquitur to the circumstantial evidence presented.
In Boudreaux v. American Insurance Co., 262 La. 721, 264 So.2d 621 (1972) the Louisiana Supreme Court, after a thorough review of the jurisprudence, applied the doctrine of res ipsa loquitur in a similar factual situation involving a fire in a restaurant:
"In this respect, the principle of `res ipsa loquitur' (the thing speaks for itself) sometimes comes into play as a rule of circumstantial evidence, whereby negligence is inferred on the part of a defendant because the facts indicate this to be the more probable cause of injury in the absence of other as-plausible explanation by witnesses found credible. Pilie v. National Food Stores of Louisiana, 245 La. 276, 158 So.2d 162 (1963); Larkin v. State Farm Mutual Auto. Ins. Co., 233 La. 544, 97 So.2d 389 (1957); Malone, Res Ipsa Loquitur and Proof by Inference, 4 La.L.Rev. 70 (1941); Comment, 25 La.L.Rev. 748 (1965). Thus, by this principle where properly applied, the circumstantial evidence indicates that the injury was caused by some negligence on the part of the defendant, without necessarily proving just what negligent act caused the injury." Id. p. 636

"King v. King, 253 La. 270, 217 So.2d 395, 397 (1968); `Res ipsa loquitur is a rule of circumstantial evidence. Its applicability is determined at the conclusion of the trial. The rule applies when the facts shown suggest the negligence of the defendant as the most plausible explanation of the accident.' (Italics ours.)
"In addition to describing this principle of circumstantial evidence, the term `res ipsa loquitur' is also sometimes used to describe the burden to prove themselves not negligent required of those using dangerous substances or engaging in dangerous activities which injure others or of those under some special relationship of care to others injured through their activity. In this type of situation, the effect of the doctrine is not only to supply an element of proof but also to shift the burden onto such type of defendant to explain or pay. Malone, Res Ipsa Loquitur, 4 La.L.Rev. 70, 95-99, 103 (1941); Prosser on Torts, pp. 213, 223, 228-30 (4th ed. 1971)." Id. at fn. 6
Applying these principles to the present controversy, the evidence as a whole shows that negligence of Guarisco or his employes was the most plausible or likely cause of the fire. We cannot as reasonably attribute the fire to another cause.
*357 There was no actual evidence, other than Guarisco's mere assertion or opinion, that the thermostat or the deep fat fryer had malfunctioned. Guarisco did not say, or produce witnesses who could say, what was wrong with the thermostat or even testify that it had been tested after the fire. If the thermostat was defective, surely this could have been established with probative evidence. The employees who were present at the time and in the best position to explain the cause of the fire were not produced as witnesses. According to Guarisco, the cooking oil would ignite at approximately 500 degrees, and the highest temperature setting on the fryer was 450 degrees. There was no evidence that the fryer was capable of heating oil over 450 degrees or that it had ever caused a conflagration in the past. No one other than Guarisco's employees is shown to have had access to the cooker at any time on the evening and morning before the fire occurred. The kitchen was in a commercial restaurant, and therefore was likely to have accumulated hazardous quantities of grease and other combustible substances. Guarisco had established no regular procedure for the maintenance or calibration of the 8½ year old thermostat. Nor had he instructed his employees to keep watch over the deep fat fryer during the boiling of the combustible cooking oil.
Guarisco, as a person using a dangerous substance and a dangerous instrumentality, was required to prove himself and his employees free of negligence. In this type situation the effect of the doctrine of res ipsa loquitur is not only to supply an element of proof but also to shift the burden of explaining the cause of the fire onto the defendant. Boudreaux v. American Ins. Co., supra, at fn. 6. In view of the circumstantial evidence arrayed against the defendant, we find Guarisco's bare assertion that the fire was caused by a defective thermostat, without more, to be inadequate to sustain his burden of explaining the cause of the fire.
For the reasons assigned, the judgment of the district court is affirmed, and the costs of the appeal are to be borne by the appellant.
Affirmed.