352 So.2d 1048 (1977)
John WALLACE, Plaintiff-Appellee,
v.
PAN AMERICAN FIRE AND CASUALTY COMPANY et al., Defendants-Appellants.
No. 5961.
Court of Appeal of Louisiana, Third Circuit.
November 17, 1977.
Rehearing Denied December 14, 1977.
Writ Refused January 30, 1978.
*1049 Bolen, Halcomb, Bolton & Erwin by Frank R. Bolton, Jr., Alexandria, for defendants-appellants, H. L. Hunt and Fidelity and Cas. Co. of New York.
Stafford, Randow, O'Neal, & Smith by Grove Stafford, Jr., Alexandria, for defendants-appellants, Wanda Petroleum Co. and Ins. Co. of North America.
Roy B. Tuck, Jr., Leesville, for plaintiff-appellee, H. F. McMullen.
Jackson & Smith by S. Chris Smith, III, Leesville, for plaintiff-appellee, John Wallace.
Gold, Hall, Hammill & Little by John F. Simon, Alexandria, for defendants-appellees, Vernon Parish School Bd. and Traders & Gen. Ins. Co.
Gist, Methvin & Trimble by H. B. Gist, Jr., Alexandria, for defendants-appellees, Jesse Scoggins, d/b/a Star Butane Gas and Pan American Fire & Cas. Co.
Cabra, Leach & Tilley by William E. Tilley, Leesville, for defendant-appellee, Hardy Hicks.
Plauche, Smith, Hebert & Nieset by A. Lane Plauche, Lake Charles, for Pan American Fire as Workmen's Compensation Insurer of Shawson Gas & Motor Co., Inc.
Before DOMENGEAUX, GUIDRY and ROGERS, JJ.
ROGERS, Judge.
The above numbered and entitled matter was consolidated for trial in the district court with McMullen v. Pan American Fire & Casualty Co. et al., 352 So.2d 1058 (La. App. 3rd Cir. 1977) our docket no. 5962. The cases remain consolidated on appeal and we decide both of these cases today. The facts and law are common in both cases, however, a description of injuries sustained by H. F. McMullen and our conclusions in regard to the quantum of damages awarded to McMullen are set forth in a separate opinion handed down this date.
Both plaintiffs, John Wallace and H. F. McMullen received severe injuries in an explosion that took place at the Evans High School in Vernon Parish, on October 23, 1970. John Wallace was awarded general and special damages totaling $166,215.55 and H. F. McMullen was awarded damages in the sum of $140,993.76. As a result of a restricted release granted by both plaintiffs to one held to be a joint tortfeasor, i. e., Jesse Scoggins d/b/a Star Butane Gas Co., the award to each plaintiff was reduced by 1/4th or to the total sum of $124,661.66 to John Wallace and $105,745.32 to H. F. McMullen.
By petition and several supplemental petitions the following parties were originally made defendants:
(1) Traders and General Ins. Co. (Traders), as the insurer of the Vernon Parish School Board;
(2) Hardy O. Hicks (Hicks), a co-employee of plaintiffs, all of whom were employed by Shawson Gas & Motor Co., Inc. (Shawson Gas);
*1050 (3) W. V. McRae, president and Ralph D. McRae, vice-president both of whom were joined as executive officers of Shawson Gas and their insurer, Pan American Fire & Casualty Co. (Pan American);
(4) Jesse Scoggins doing business as Star Butane Gas Co., and his insurer, Pan American;
(5) Wanda Petroleum, Inc. (Wanda) and its insurer the Insurance Company of North America (ICNA);
(6) Hunt Oil Co.;
(7) Hunt Petroleum Co.;
(8) H. L. Hunt (Hunt) and his insurer, Continental Insurance Co. By stipulation all parties recognized, acknowledged and agreed that The Fidelity and Casualty Company of New York (Fidelity) was the correct insurer of Hunt.
Pan American intervened in both proceedings as the workmen's compensation insurer of Shawson Gas seeking reimbursement out of the proceeds of any judgment rendered in favor of plaintiffs and against defendants for workmen's compensation and medical expenses which were paid prior to the date of the filing of the petition of intervention or which might be paid by intervenor in the future, said petition of intervention being filed pursuant to the provisions of LSA-R.S. 23:1101-1103.
There were several third party demands filed seeking indemnity and/or contribution, these being as follows: (a) Jesse Scoggins d/b/a Star Butane and its insurer, Pan American filed a third party demand against Wanda and Hunt and their insurers seeking indemnity; (b) Wanda and its insurer, ICNA filed a third party demand seeking indemnity and/or contribution from Hunt and his insurer, Fidelity; (c) Hunt, Hunt Oil Co., Hunt Petroleum Co. and Fidelity filed a third party demand against Jesse Scoggins, d/b/a Star Butane and Pan American seeking indemnity and/or contribution. We observe at this point that neither the trial court's written reasons for judgment nor the final judgment rendered and signed in these consolidated matters disposes of any of these third party demands.
Prior to trial plaintiffs entered into a compromise arrangement with Jesse Scoggins d/b/a Star Butane and its insurer, Pan American, William V. and Ralph D. McRae, executive officers of Shawson Gas and their insurer, Pan American, as a result of which plaintiffs granted to said parties a restricted release specifically reserving all of their rights against the remaining defendants. In the compromise arrangement, Pan American, as the workmen's compensation insurer of Shawson Gas, relinquished its right to reimbursement for compensation and medical expenses previously paid and to be paid in the future and agreed to dismiss its intervention with prejudice. Following the consummation of this compromise arrangement, an order was granted in each case dismissing these actions with prejudice against Jesse Scoggins, d/b/a Star Butane and its insurer Pan American and William V. and Ralph D. McRae as executive officers of Shawson Gas, together with their insurer Pan American. Additionally, an order was rendered dismissing the intervention of Pan American as the workmen's compensation insurer of Shawson Gas.
Following trial, the trial court, for written reasons assigned, rendered judgment in favor of plaintiffs and against Hunt and his insurer, Fidelity; Wanda, and its insurer, ICNA; and, Hardy O. Hicks. The trial court's written reasons for judgment also found Jesse Scoggins d/b/a Star Butane tortiously liable in solido with the above named defendants however, considering the restricted release previously granted by plaintiffs and recognizing the remaining defendants' rights to contribution reduced the quantum of the judgment by 1/4th.
Hunt and his insurer, Fidelity, and Wanda and its insurer, ICNA appeal. Hardy O. Hicks did not appeal. Plaintiffs answered the appeals and ask an increase in quantum.

FACTS
The facts of the case are rather involved, and the issues are numerous. The trial judge has summarized the facts well and concisely and we adopt most of the factual *1051 background that he presented in his Reasons for Judgment as follows:
"In April or May of 1970, Mr. Jackson, an employee of Star Butane, suspected that the gas tank at the Evans School might have a leak as the tank seemed to be using more gas than he thought it should. This fact was called to the attention of the school's principal who requested that the system remain operational until the end of the school term.
In June or July of 1970 Star sent some employees to the Evans School to check the system for any leaks and to then do any necessary repairs. The valve at the tank was found to be open and gas occupied the lines from the tank to the appliances within the school. Bubbles were observed rising in water on the ground directly above the underground line. No smell of gas was detectable from the bubbles but the gaseous substance did burn when a lighted match was thrown into the water. A portion of this line was then dug up and found to be rusted, full of holes and leaking. This portion of old pipe was replaced with 40 foot of new pipe but the system would not hold sufficient air pressure. Mr. Dowden, one of the employees then reported to the janitor and Steve Deason that the system needed changing and not to connect the tank. Mr. Dowden testified that he did not smell gas, either inside or outside of the building, although he did not check the tank to see if the gas was odorized. The Vernon Parish School Board was notified and they then awarded a contract to Shawson Gas to replace the outside lines. By October 23, Shawson Gas, without removing the old outside lines, had constructed and pressure tested a new outside line running from the one-thousand (1000) gallon butane storage tank south of the school to the swing joint where the gas lines entered the building. Mr. McMullen and Mr. Wallace had the job of opening and closing the ditches in which the new lines were placed. Mr. Vernon McRae, the president and general manager of Shawson Gas, was responsible for supervising the laying of these lines through his capacity as executive officer. Mr. Hardy Hicks who held an all phase card of competency from the Louisiana Liquified Petroleum Gas Commission, made all the connections in the line and did the work of connecting the new outside line to the existing gas lines and appliances within the building. Tom Russel was Mr. Hicks' helper in connection with these activities. When this work was completed, Mr. Hicks turned on the gas at the tank and began opening the stop valves just outside the building on each lead-in one at a time so that the testing and lighting of the pilot lights in the appliances could be accomplished. Then the testing and lighting began in the elementary or north wing of the building. By the time Mr. Hicks reached the east side of the high school side of the building, it was raining extremely hard and to keep from having to make intermittent trips back out into the rain, Mr. Hicks proceeded along the east side of the high school wing and opened all five of the outside stop valves serving this wing. This permitted gas to flow into the inside lines which served the home economics room, the girl's restroom, the sick room, the boy's restroom and the science room. There were five service lines with one line going into each room although there were two sources of gas going into the Home Economics room. One of these sources ran from the main to a heater on the wall. The other ran from the main, went into the girl's restroom and then teed into the wall, and ran into the Home Economics room to two Tappan gas ranges.
After turning on these outside valves, Mr. Hicks proceeded to the home economics room at the northeast corner of the wing and tested and lighted the heater and Tappan ranges. This proves that the line coming into the girl's room was open and that it had gas in it. Remembering that there were some gas jets in the science room located at the southeast corner of the wing and not being able to recall whether or not these jets were *1052 closed, he proceeded to the science room and lit the pilot on the suspended heater. No tests has as yet been made of the connections or appliances since the outside stop valves had been opened. Mr. Hicks then worked in a northerly direction along the east side of the wing and tested and lighted the pilot in the boy's restroom and then proceeded into the sick room which was adjacent to the girl's restroom. There a leak was found in the union which was repaired before the unit was tested and lighted. Mr. Hicks and Mr. Russell were at this point at the time of the explosion.
In the meantime, Mr. McMullen and Mr. Wallace had come into the building to escape the heavy rain and asked Mr. Hicks how many of the appliances still were unlighted. When they received no answer they proceeded to discover this by making their own inspection. They entered the girl's restroom from the hallway and approximately 30 seconds later the explosion occurred which caused their injuries."
In his written reasons for judgment the trial judge concluded from the voluminous evidence presented that the defendant, Hardy O. Hicks was negligent in that he made all the connections in the lines and did the work of connecting the new outside lines to the existing gas lines and appliances within the building and in doing so failed to properly connect or tighten the union back of the suspended heater in the girls' restroom which permitted an unrestricted flow of highly flammable Liquified Petroleum Gas (LPG) into that room. The court also found that Mr. Hicks' actions in opening all five of the outside stop valves along the east side of the high school wing of the Evans Building which permitted gas to flow into the pipe leading into the heater in the girls' restroom for approximately 45 minutes to one hour before the explosion on October 23, 1970 constituted negligence. The trial judge concluded that these acts of Hardy O. Hicks were a concurring proximate cause of the explosion. Hardy O. Hicks has not appealed and the judgment against him is now final.
The trial judge next determined that the LPG supplied to the Evans School was either unodorized or under-odorized determining that under the Louisiana LPG Commission regulations, a duty is imposed upon all manufacturers and distributors of LPG to use proper means to insure that a malodorant is applied to all gas that is destined for public consumption. He further concluded that Hunt, the manufacturer, was negligent in failing to properly odorize the gas sufficient to act as a warning agent; that Wanda, the wholesaler, was negligent in its failure to take appropriate steps to insure that malodorant was added to the gas which it owned and sold to Star Butane; and, that Star Butane, the retail distributor, was negligent in its failure to take affirmative steps to see that malodorant was being added to the gas purchased by it from Wanda at the Clear Creek Plant. The court next found that the failure to add malodorant or a sufficient amount thereof to the gas delivered to the Evans school constituted a cause in fact of plaintiffs' injuries. Accordingly, these three defendants were found solidarily liable with Hicks for the injuries sustained by both plaintiffs.
The trial court found that although the manufacturer, wholesaler and distributor of LPG gas are not insurers against damage or injury, they are charged with a duty of exercising a high degree of care. The trial judge concluded that defendants did not under the circumstances of this case exercise the degree of care required. All State Insurance Co. v. Town of Ville Platte, 269 So.2d 298 (La.App. 3rd Cir. 1972).
We discern no manifest error in the trial court's determination that the LPG supplied to the Evans school was unodorized or, in any event, under-odorized. Although the evidence in this regard is in conflict, we find a reasonable factual basis in the record to support the trial judge's conclusion. This being so the trial court's finding should not be disturbed. In Canter v. Koehring Company, 283 So.2d 716 (La.1973), the Supreme Court stated:

*1053 "When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."
Having determined that the LPG was unodorized or in any event, under-odorized to the end that its escape could not be detected, we conclude that the trial court properly found all three defendants, Hunt, Wanda, and Star Butane, guilty of negligence which proximately contributed to plaintiffs' injuries.
In Home Gas & Fuel Co. v. Mississippi Tank Co., 246 La. 625, 166 So.2d 252, 255 (La.1964), a case concerning LPG, the Louisiana Supreme Court said:
"Moreover, the jurisprudence of this State has recognized the greater and higher than ordinary degree of care demanded of those involved in the manufacture, preparation and distribution of propane-butane gas and similar products. Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); Harris Drilling Co. v. Delafield, 222 La. 416, 62 So.2d 627 (1953); Hake v. Air Reduction Sales Co., 210 La. 810, 28 So.2d 441 (1946); Jones v. Blossman, 209 La. 530, 25 So.2d 85 (1946)."
Professor Wex S. Malone, writing in 7 Louisiana Law Review 250 (1947) made the following observation:
"Persons who deal in gas, electricity and other highly dangerous substances must exercise care commensurate with the unusual peril that is involved. In such cases the liability imposed is virtually absolute, although the situation may be discussed by the court in terms of negligence. The decisions contain frequent references to the `highest degree of care', and res ipsa loquitur is readily available to supply proof of the defendant's shortcomings."
The above rule was reiterated in Gregory v. Guarisco, 320 So.2d 354, 356 (La.App. 2nd Cir. 1975), where the court said:
"It is a well-recognized rule of law followed in this state that those who use or handle dangerous agencies, substances or instrumentalities such as explosives, electricity, firearms, combustibles and fireworks, which might endanger persons or property, are held to a high degree or extraordinary degree of care."
The 4th Circuit Court of Appeals, in Reggio, et al. v. Louisiana Gas Service Company, 333 So.2d 395, 402 (1976), which involved an explosion of natural gas, stated:
"Well established in our jurisprudence is the rule that the degree of care owed others increases in relation to the increase in inherent danger. Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148 (1945); Pagitt Well Service, Inc. v. Sam Broussard, Inc., 293 So.2d 631 (La.App. 3rd Cir. 1974), writs refused, 295 So.2d 817 (La.1974). Clear from the record and undisputed is the fact that the explosion and fire were caused from an accumulation of natural gas in the Reggio residence. Natural gas, because of its highly inflammable and explosive character, is recognized in our jurisprudence as an inherently dangerous instrumentality and those who handle and distribute it are charged with the duty to exercise that degree of care commensurate with its dangerous character for the protection of the public from any foreseeable injury." (citations omitted).
Attorneys for H. L. Hunt, in their appellate brief, urge that the trial court erred in *1054 casting H. L. Hunt in judgment, claiming that he died during the proceedings and that his legal representative was not substituted as a party defendant, and therefore any judgment against a deceased party is an absolute nullity, citing Whitehall Oil Company v. Boagni, 217 So.2d 716 (La.App. 3rd Cir. 1969), writ granted 253 La. 731, 219 So.2d 512, 255 La. 67, 229 So.2d 702 (La.1969); Carroll v. Zurich Insurance Company, 200 So.2d 765 (La.App. 3rd Cir. 1967).
H. L. Hunt may have died prior to rendition of judgment, however, we find no evidence of this fact in the record. This being considered we cannot conclude that the judgment against Hunt is invalid.
In Rayborn v. Smiley, 324 So.2d 514 (La. App. 1st Cir. 1975), we observe the following pertinent language:
"The defendants also state in brief that the defendant Smiley is dead and argue that any judgment against him would be an absolute nullity, citing Gulfco Finance of Livingston, Inc. v. Lee, 224 So.2d 524 (La.App. 1st Cir. 1969), and appeal after remand, 241 So.2d 301 (La.App. 1st Cir. 1970). We find no evidence of this fact in the record. If, through proper pleadings, the defendants had placed such evidence in the record, the plaintiffs would be given an opportunity to amend their petition so as to include the defendant Smiley's legal representatives."
We next consider the third party demands made by the various parties. Neither the written reasons for judgment of the trial court nor the formal judgment considers or disposes of any of the third party demands made by the parties defendant against each other. Insofar as these third party demands are concerned, although the parties refer to these demands and brief their contentions in connection therewith, this court cannot consider same as they are not before the appellate court, there being no disposition of such demands by the trial court and the formal judgment not making any reference thereto.
In Collins v. Slocum, 304 So.2d 675 (La. App. 3rd Cir. 1974) we stated:
"In order to render a judgment which is just, legal, and proper, all matters presented in the pleadings should be tried and decided. As permitted by LSA-C. C.P. art. 2164, we find it appropriate to remand this case so that all issues may be presented at one time. Specifically, we note the pending claim against McSween & McSween and the absence of a judgment deciding the claim against Louis J. Daigre Associates. If the judgment in the consolidated suit is not final and should an appeal be taken in that suit, we note the absence of a judgment deciding the third party claims.
The case is remanded to enable the court to try the remaining issue or issues and to decide all claims presented by the pleadings."
We also note the case of Leleux v. Lumbermen's Mutual Ins. Co., 318 So.2d 15 (La. 1975). In the Leleux case there was a third party demand filed by the defendants which was not considered because the trial court determined that the plaintiff should be denied the relief which she sought. The Supreme Court reversed the trial court finding liability on the part of the defendant. This finding of liability on the part of the defendants made viable the third party claim previously filed by the defendant against a third party. The Supreme Court in such instance determined that the matter should be remanded to the district court for the purpose of proceeding with the third party demand. In that case the court stated:
"In the present case, the third party demand was not passed upon in the trial court. The plaintiff alone appealed. The partnership defendants did not answer the appeal. Hence, the third party demand against the insurance agent was not before the Court of Appeal. Nor is it before this Court. LSA-C.C.P. Article 2133; McCoy v. Pacific Coast Fire Insurance Co., 248 La. 389, 178 So.2d 761 (1965). It is proper, therefore, to remand the case to the district court for the purpose of proceeding with the third party demand. LSA-C.C.P. Article 2164; McCoy v. Pacific Coast Fire Insurance Company, supra."

*1055 Article 2083 of the La.Code of Civil Procedure provides that an appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default and from an interlocutory judgment which may cause irreparable injury. It is well settled that no appeal lies from a judgment before it is signed. Miami Truck & Motor Leasing Co. v. Dairyman, Inc., 263 So.2d 110; Rourke v. Coursey, 334 So.2d 480 (La.App.1976); Disalvo v. Picard, 303 So.2d 900 (La.App.1974); McElwee v. McElwee, 244 So.2d 35 (La.App.1971).
For the above reasons we will remand the consolidated cases to the trial court for consideration of the various third party demands.
Hunt next contends that the trial court erred in failing to find liability on the part of the Vernon Parish School Board. The trial court, in relieving Traders, insurer of the Vernon Parish School Board, of any liability stated as follows:
"The school board did not make any negligent act or omission which contributed to the accident. They awarded the contract to replace the lines at the Evans School to qualified and certified people of which the school board had no knowledge that they would act improperly. Furthermore, the crevis (sic) theory which was raised and which brought the school board into this case was found to be invalid. There was no evidence which showed that the school board had let gas seep under the school building which could subject them to liability."
We find no manifest error in this holding and affirm.
Hunt next contends that the trial court erred in its failure to find liability on the part of the McRaes as executive officers of Shawson Gas and their insurer, Pan American.
This contention is without merit. The trial court's determination in regard to the McRaes and their insurer, was superfluous in that prior to trial plaintiffs' suits as against the executive officers of Shawson Gas were dismissed with prejudice and none of the defendants filed third party demands seeking contribution and/or indemnity from these executive officers. The issue as to the liability of the McRaes was not before the trial court and is not before us on this appeal.
Hunt next contends that the trial court erred in its admission of improper rebuttal testimony. We find no merit in this contention. LSA-C.C.P. Articles 1631 and 1632; Bradford v. Brewton Butane Company, Inc., 319 So.2d 892 (La.App. 3rd Cir. 1975).
Finally, Hunt argues that the trial judge erred in casting Hunt in judgment for plaintiffs' medical expenses which were paid by the compensation insurer, Pan American. Hunt contends that the payment of plaintiffs' medical expenses by the compensation insurer was not through any fund, insurance, or benefit that the plaintiff contributed to and should not be subject to the so-called "collateral source rule".
In Hall v. State Department of Highways, 213 So.2d 169, 175 (La.App. 3rd Cir. 1968), we held as follows:
"While a tortfeasor is entitled to credit for payments made through insurance procured by the tortfeasor himself, Gunter v. Lord, 242 La. 943, 140 So.2d 11 (1962), the plaintiff's tort recovery is not diminished because of payments made through insurance of (sic) other collateral sources independent of the wrongdoer's procuration or contribution, Gunter v. Lord at 140 So.2d 16; American Indemnity Co. v. New York Fire & Marine Underwriters Inc., 196 So.2d 592 (La.App. 1 Cir. 1967); Roux v. Brickett, 149 So.2d 456 (La.App. 3d Cir. 1963)."
In Richoux v. Grain Dealers Mutual Insurance Company, 175 So.2d 883 (La.App. 3rd Cir. 1965), we stated in a factually similar case:
"Prior to the trial of the case, Gallagher (one of the plaintiffs) received from the compensation insurer of his employer the aggregate sum of $2,404.34 as compensation benefits and medical expenses *1056 because of the alleged injury, which amount includes a sum of money which was paid by the insurer as a settlement of his claim for additional compensation benefits. The compensation insurer intervened in this suit, demanding that it be reimbursed the amounts paid by it out of the sum which may be recovered from the defendant herein, but that intervention was subsequently dismissed and no such claim is now before us. Defendant contends that it nevertheless is entitled to credit for the compensation benefits which were paid, even though no claim for reimbursement is being made by the compensation insurer.
The applicable rule of law is that in an action in tort by an injured employee against a third party tort feasor, where the liability of the tort feasor is established and the employer does not intervene for reimbursement of compensation benefits paid, the plaintiff is entitled to recover the full amount of the damages sustained by him, without deduction of the amounts which he has received from his employer as compensation benefits.. . . In view of the above cited provision of the Revised Statutes and the established jurisprudence of this state, we conclude that defendant is not entitled to credit for the amounts which Gallagher previously had received as compensation benefits."
Under these authorities, we believe that Hunt is not entitled to credit for medical expenses or workmen's compensation payments previously paid to plaintiffs by Pan American.

QUANTUM
Hunt contends that the quantum award to the plaintiff, John Wallace, was clearly excessive and should be reduced. Plaintiff contends that the award should be increased.
The trial court, in its reasons for judgment, gave the following description of plaintiff's injuries:
"The injuries suffered by Mr. Wallace were substantially similar in all respects to those suffered by Mr. McMullen. After the accident of October 23, 1970, Mr. Wallace was also examined by Dr. Hearn and found to be in acute pain and neurogenic shock. He was suffering from first, second and third degree burns over a large portion of his body. Twice a week for months he was forced to undergo a surgical procedure to debride (sic) necrosis tissue. At the time of the trial of this case, Mr. Wallace was still under the treatment of Dr. Hearn. After the accident, he remained in the hospital for over three months. During this time he could not feed himself, attend to his bodily functions or recognize people by the sense of sight. His head was swollen out of proportion, the flesh on his face and hands were badly burned and his eyelids and part of his ears were burnt off. His hands were so badly burned that he is now totally disabled to perform the types of work that he is suited to. His eyes are also in such condition that they will always need treatment. The description by Mr. McMullen that Wallace changed colors from black to white was reflected by the pictures introduced in these proceedings. The fact that Mr. Wallace asked Tom Russell to grease him with motor oil to relieve the pain (which Mr. Russell actually did), indicates what the situation must have actually been like.
At the time of his trial, Mr. Wallace had incurred medical expenses totaling $6,215.55. It was also the opinion that he would continue to incur medical expenses of approximately $60.00 a month for an indeterminable period of time.
At the time of his injuries, Mr. Wallace was 40 years old. The life expectancy of a 40 year old black male, was approximately 27.4 years. He had been mostly a helper in construction related work. He seemed to work regularly and had nothing physically wrong with him. As a result of this accident, Mr. Wallace is now permanently disabled from doing work of the same or similar kind for which he is fitted.

*1057 Based on the type of work that Mr. Wallace performed, it would be difficult indeed to say how long he could have continued to do this type of work. It is also uncertain as to how many more years Mr. Wallace would incur medical expenses as a result of these injuries. Even though losses of future earnings and future medical expenses cannot in this instance be proven with mathematical certainty, it appears with reasonable certainty that such losses will occur. Based on remaining 25 years work life to the age of 65, along with a 40 hour work week and $2.00 an hour pay scale, the loss of earnings would amount to $104,000.00. If the medical expenses of $60.00 a month would last the remainder of his life expectancy, this would total almost $20,000.00. Therefore, taking into consideration the present value of the dollar along with inflation and other factors, this Court feels that a present value award of $60,000.00 for loss of wages and future medical expenses will be sufficient.
As in the McMullen case, this Court feels that $100,000.00 in general damages will be fair and adequate award for pain and suffering.
Judgment is rendered therefore in favor of John Wallace in the sum of $166,215.55 and against all defendants cast herein in solido. The expert witness fees of Dr. J. E. Hearn, Dr. Lewell C. Butler, Dr. S. R. Lewis and Dr. Donald E. Texada are set at $140.00 each and the fee of Mr. Edmund Thomas is set at $200.00 and are hereby taxed as costs of these proceedings.
Since one of the negligent parties has been released under a restrictive release, the judgment must be reduced accordingly. It is our law that when an injured party compromises his claim with one joint-tortfeasor and reserves his rights against all other tortfeasors, the injured party has thereby deprived the remaining parties of their right to enforce contribution from the tortfeasor released. Accordingly, the demand against the remaining tortfeasors is reduced by the virile portion of the released party.
Therefore the judgments in favor of both McMullen and Wallace must be reduced by 1/4. Accordingly, the judgment in favor of H. F. McMullen is reduced to $105,745.32 and the judgment in favor of John Wallace is reduced to $124,661.66. Defendants cast in solido herein in both cases are H. L. Hunt and his insurer, New York Fidelity (sic) and Casualty Company; Wanda Petroleum Company and its (sic) insurer, Insurance Company of North America; and Hardy O. Hicks."
We believe the amount of damages awarded plaintiff by the trial court was somewhat low, however, we find this award to be within the range of the trial court's discretion. We will not disturb this award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
For the reasons assigned, we affirm the judgment in favor of plaintiff and against H. L. Hunt, The Fidelity and Casualty Company of New York, Wanda Petroleum, Inc., Insurance Company of North America, and Hardy O. Hicks. We remand all third party demands for disposition by the trial court.[1] Costs to be borne equally by all defendants cast in judgment.
AFFIRMED IN PART AND REMANDED.

ON APPLICATION FOR REHEARING
PER CURIAM.
In their applications for rehearings in the captioned matters H. L. Hunt, Fidelity and Casualty Company of New York, Wanda Petroleum, Inc., and Insurance Company of North America, point out that we erred in our determination that the issue as to the liability of the McRaes, as executive officers of Shawson Gas, was not before the trial court and was not before us *1058 on appeal. (See page 1055 of the original opinion rendered in our docket number 5961). We acknowledge that this was error in that the McRaes, as executive officers, were originally joined as defendants and were dismissed from these proceedings as the result of a restrictive release granted by plaintiffs to, among others, the McRaes. Although dismissed from these proceedings as the result of a restrictive release the remaining defendants had the right to have the liability of the McRaes determined on appeal, for if the McRaes were found to be at fault and liable unto plaintiffs, then in that event the judgment in favor of plaintiffs against the remaining defendants would be proportionately reduced. R.C.C. Article 2203. Accordingly, after receipt of the applications for rehearing we re-examined the records in the captioned matters with regard to this issue.
The trial court determined that the McRaes were not liable as executive officers of Shawson Gas, in that they had delegated their responsibilities with due care to a qualified and responsible subordinate, i. e., Hardy O. Hicks. Our re-examination of the records in these cases discloses no manifest error in this conclusion of the trial court. Canter v. Koehring Company, 283 So.2d 716 (La.1973). Accordingly, the trial court's conclusion in this regard is affirmed. Thus having disposed of this issue which we erroneously failed to consider on original hearing and finding no merit in the other grounds urged by applicants the applications for rehearing are denied, as is more fully shown by a notation to this effect on each application for rehearing.
NOTES
[1] Neither the trial court's written reasons for judgment nor the final judgment rendered and signed in the consolidated matters disposes of plaintiff's claims as against Hunt Oil Co. and Hunt Petroleum Co. There being no disposition of those demands by the trial court this court cannot consider same. On remand those claims should be disposed of by the trial court.