No. 59,588

IRL SHUTTS, *et al.*, *Appellees*, v. PHILLIPS PETROLEUM COMPANY, *Appellant.*

(732 P.2d 1286)

Opinion filed February 25, 1987.

*Joseph W. Kennedy*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Robert W. Coykendall*, of the same firm, *Arthur R. Miller*, of Cambridge, Massachusetts, and *T. L. Cubbage, II*, of Bartlesville, Oklahoma, were with him on the briefs for the appellant.

*Gordon M. Penny*, of Chapin & Penny, of Medicine Lodge, argued the cause, and *W. Luke Chapin*, of the same firm, *Harold Greenleaf*, of Smith, Greenleaf & Brooks, of Liberal, and *Ed Moore*, of Ginder & Moore, of Cherokee, Oklahoma, were on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is the third time this class action case has come before the Supreme Court for review. In *Shutts, Executor v. Phillips Petroleum Company*, 222 Kan. 527, 567 P.2d 1292 (1977) (*Shutts I*), a class action against Phillips Petroleum Company (Phillips), plaintiffs sought to recover interest on "suspense royalties" attributable to gas produced from leases in the three-state Hugoton-Anadarko area, the largest physical portion of which was located in Kansas, during a nine-year-period from June 1961 to October 1970. The named plaintiff, a Kansas resident, was a representative of a class of 6,400 gas royalty owners, 218 of whom were Kansas residents. This court ruled it could exercise in personam jurisdiction over unnamed nonresident class plaintiffs where procedural due process was satisfied by notice, an opportunity to be heard, and adequate representation. Having found the class action was proper and binding on nonresident plaintiffs, this court also ruled that, under the equitable principle of unjust enrichment, Phillips was liable to the plaintiffs for interest on the suspended royalties in the amount set forth under Phillips' corporate undertaking with the Federal Power Commission (FPC), seven percent per annum, with an additional statutory post-judgment interest of eight percent per annum.

*Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 679 P.2d 1159 (1984) (*Shutts II*), was factually similar to *Shutts I*. A class action

suit was brought by Irl Shutts and Robert and Betty Anderson, individually and on behalf of 28,100 royalty owners, including residents of all 50 states, the District of Columbia, the Virgin Islands, and several foreign countries, against Phillips for recovery of interest on suspended gas royalties. These royalty payments were withheld by Phillips at various times while Phillips awaited approval by the FPC for gas price rate increases. When approval was granted, Phillips paid the total amount of the suspended royalties to the royalty owners without interest. It was held first that Kansas had in personam jurisdiction over the nonresident class members as the procedural due process requirements were satisfied when each class member was provided notice by first-class mail describing the action and informing each member he could appear in person or by counsel, and otherwise he would be represented by Shutts and the Andersons, and that class members would be included in the class and bound by the judgment unless they "opted out" of the suit by returning a "request for exclusion." Second, as to the choice of law issue, it was held that, under Kansas law and the principles of equity, Phillips was liable for interest to the royalty owners on the suspended royalties at the rates set forth in Phillips' corporate undertaking with the FPC; seven percent per annum prior to October 10, 1974; nine percent per annum thereafter until September 30, 1979; and thereafter, at the average prime rate compounded quarterly. Statutory post-judgment interest of fifteen percent per annum (K.S.A. 16-204) was also imposed. In determining that Kansas law applied, it was stated:

"In *Shutts I* it was held the rate of interest set forth in the corporate undertaking established an appropriate measure of damages to compensate the plaintiffs for the unjust enrichment derived by Phillips from the use of the plaintiffs' money. In the instant case Phillips has not satisfactorily established why this court should not apply the rule enunciated in *Shutts I* and instead look to the law of each state where leases are located to determine whether damages should be based upon a rate different from that set forth in the FPC undertaking. The general rule is that the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred. 16 Am. Jur. 2d, Conflict of Laws § 5. Where a state court determines it has jurisdiction over a nationwide class action and procedural due process guarantees of notice and adequate representation are present, we believe the law

of the forum should be applied unless compelling reasons exist for applying a different law. All of the plaintiff class members in this lawsuit were given actual notice that this action was being brought on their behalf in Kansas. The plaintiffs had the opportunity to opt out of the lawsuit, but chose to have their claims litigated in the Kansas courts. We have hereinbefore held the unnamed plaintiff class members were adequately represented in the lawsuit and that the forum has a significant legitimate interest in adjudicating the claims of the class members. The common fund nature of the lawsuit provides an excellent reason to apply a uniform measure of damages to the class as a whole, as each member of the class has been similarly deprived of the rightful use of his or her money. The plaintiff class members have indicated their desire to have this action determined under the laws of Kansas. Compelling reasons do not exist to require this court to look to other state laws to determine the rights of the parties involved in this lawsuit." 235 Kan. at 221-22.

Phillips appealed to the United States Supreme Court, *Phillips Petroleum Company v. Shutts,* 472 U.S. 797, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985). The United States Supreme Court first ruled Kansas properly accepted jurisdiction over the nonresident plaintiffs as the procedural due process requirements were satisfied, as stated above. 472 U.S. at 814. As to the choice of law question, however, it was ruled the application of Kansas law to all of the investors' claims for interest violated the due process and full faith and credit clauses. In its analysis, the Court first noted that if the law of Kansas was not in conflict with any of the other jurisdictions connected to the suit, then there would be no injury in applying the law of Kansas. 472 U.S. at 816. The Court then cited differences in the laws of Kansas, Texas, and Oklahoma which Phillips *contended* existed. It appears, however, no analysis was made by the Court to determine whether these differences existed in fact. The Court stated:

"Petitioner claims that Kansas law conflicts with that of a number of States connected to this litigation, especially Texas and Oklahoma. *These putative conflicts range from the direct to the tangential, and may be addressed by the Supreme Court of Kansas on remand under the correct constitutional standard.*

. . . .

"The conflicts on the applicable interest rates, alone—*which we do not think can be labeled 'false conflicts' without a more thorough-going treatment than was accorded them by the Supreme Court of Kansas*—certainly amounted to millions of dollars in liability. We think that the Supreme Court of Kansas erred in deciding *on the basis that it did* that the application of its laws to all claims would be constitutional." (Emphasis added.) 472 U.S. at 816-18.

The basis of Kansas contacts reviewed and rejected by the

Court included the common fund analogy. Because Phillips had commingled the suspended royalties with its general corporate account, the Court found there was no specific identifiable res in Kansas, nor any limited amount to deplete before every plaintiff was compensated. The idea that all the plaintiffs consented to be bound by Kansas law when they failed to "opt out" of the suit was rejected because a plaintiff's desire is rarely, if ever, controlling on the choice of applicable law. Finally, the fact that a nationwide class action was being adjudicated and the requirements of procedural due process satisfied was found not to be a sufficient reason to apply the law of the forum.

"Kansas must have a 'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests' in order to ensure that the choice of Kansas law is not arbitrary or unfair. *Allstate [Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 66 L. Ed. 2d 521, 101 S. Ct. 633, *reh. denied* 450 U.S. 971 (1981)]. *Given Kansas' lack of 'interest' in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits."* (Emphasis added.) 472 U.S. at 821-22.

Again, those constitutional limitations are "that for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 66 L. Ed. 2d 521, 101 S. Ct. 633, *reh. denied* 450 U.S. 971 (1981). It is important to note the Court stated the following:

"We make no effort to determine for ourselves which law must apply to the various transactions involved in this lawsuit, and *we reaffirm our observation in Allstate that in many situations a state court may be free to apply one of several choices of law.* But the constitutional limitations laid down in cases such as *Allstate* and *Home [Ins.] Co. v. Dick*, [281 U.S. 397, 74 L. Ed. 926, 50 S. Ct. 338 (1930)], must be respected even in a nationwide class action." (Emphasis added.) *Phillips*, 472 U.S. at 823.

On remand, the district court of Seward County, Kansas, reviewed the laws of the other states involved and found no conflicts existed with the laws of Kansas on the two issues of liability and applicable interest rate. The decision made by this court in *Shutts II* was adopted by the district court.

Phillips brings this appeal arguing (1) the district court on remand failed to follow the decision of the United States Supreme Court, (2) the laws of the other states connected to this suit conflict with the laws of Kansas, and (3) the district court erred in imposing post-judgment interest of fifteen percent.

Here, the gas produced by Phillips is produced in eleven different states: Kansas, Texas, Oklahoma, Louisiana, New Mexico, Wyoming, Arkansas, Illinois, Mississippi, Utah, and West Virginia. The leases located in Texas and Oklahoma make up 82% of Phillips' total leases nationwide. The leases in Kansas, Louisiana, New Mexico, and Wyoming total 17% of Phillips' nationwide leases. Following is a chart of the interests of the states where 97% of the leases are located:

| | No. Leases in State | Royalties to State Leases | No. Royalty Owners in State | Royalties Paid to State Royalty Owners |
|---|---|---|---|---|
| TEXAS | 11,595 | $5,626,114.55 | 26,022 | $4,677,541.43 |
| OKLAHOMA | 4,644 | $ 797,997.37 | 8,928 | $1,340,714.42 |
| NEW MEXICO | 1,882 | $ 651,045.07 | 1,429 | $ 449,544.13 |
| WYOMING | 1,234 | $1,161,918.03 | 722 | $ 683,428.51 |
| LOUISIANA | 272 | $3,056,335.64 | 2,345 | $2,369,714.92 |
| KANSAS | 22 | $ 2,887.22 | 1,553 | $ 122,638.40 |

We will review the laws of each of these states as applicable to the two issues involved: (1) whether Phillips is liable to the royalty owners for interest on the suspended royalties; and (2) if Phillips is liable, what is the applicable interest rate?

## TEXAS

LIABILITY

The leading Texas case on liability for interest on suspended royalties is *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex. 1978). There, Phillips was a buyer and Stahl the seller under a casinghead gas contract. Under the contract, the price Phillips paid to the seller was based on what Phillips was receiving on its sales to third parties. Phillips had requested price increases with the FPC as to the sales it made to third parties. Pending FPC approval, Phillips was collecting the increased prices from those third parties, and placing the increase in a general fund. Phillips, however, did not increase its pay-

ments to Stahl. Upon final approval of the price increases by the FPC on October 30, 1972, Phillips recomputed the payments to Stahl and on December 7, 1972, paid it $24,000 without interest. Three years later, Phillips sought a declaratory judgment that: (1) under the contract, it was not liable to Stahl for the $24,000; (2) if Phillips was liable, it was not liable for interest; and (3) if Phillips was liable for interest, it was not liable for interest prior to October 30, 1972, the date of the FPC's final approval. On June 28, 1976, the trial court ruled that, under the contract, Phillips was not expressly, but was impliedly, obligated to pay Stahl $24,000, and that Phillips was not liable for interest.

The case first came up for review before the Texas Court of Civil Appeals in *Stahl Petroleum Co. v. Phillips Petroleum Co.*, 550 S.W.2d 360 (Tex. Civ. App. 1977). There, Stahl argued it was entitled to $14,000 interest accruing to the date of payment and it was entitled to $3,000 interest on the $14,000 to the date of judgment. The appellate court did not rely on *Phillips Petroleum Company v. Adams*, 513 F.2d 355 (5th Cir.), *cert. denied* 423 U.S. 930 (1975), which will be discussed later, but instead relied on a common-law principle to find Phillips liable for interest on the $24,000. That common-law principle is that "interest cannot be allowed *eo nomine—i.e.*, under that name—unless especially provided for by statute, except where interest is assessed, sans statutory sanction, as damages to indemnify a party for a wrong done to him." 550 S.W.2d at 365. The court stated that, under the facts presented, the claim for interest was not an element of damages for tortious injury, but rather a claim under a contract and, therefore, had to be authorized by statute. The applicable statute at the time the contract was executed defined "interest" as "the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money." 550 S.W.2d at 365. It was stated that Stahl claimed interest because Phillips used Stahl's money, and the sum due was ascertainable and came within the meaning of the statute. Stahl recovered $14,000 interest and $3,000 interest on that sum.

On review by the Texas Supreme Court, that court stated the common-law rule that prejudgment interest cannot be allowed *eo nomine* unless provided for by contract or statute has not been rigidly or consistently applied in a manner which would deny a

party legal compensation for the use or detention of his money. *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480. The Supreme Court found the court of civil appeals had reached the correct result, but did not agree with that court that Stahl's right to recover existed only under an enabling statute. The Supreme Court relied on *Phillips Petroleum Company v. Adams*, 513 F.2d 355, a federal case interpreting Texas law. In *Adams, Phillips was held liable for interest on delayed payments under the equitable principle that Phillips should not be able to use someone else's money, thereby receiving a benefit, yet paying nothing.* Thus, the Texas Supreme Court ruled that interest for the use of money is an equitable exception to the common-law rule of interest *eo nomine. Stahl*, 569 S.W.2d at 487. The court affirmed Stahl's award of $14,000 interest (six percent interest on the $24,000 suspended payments) and the additional $3,000 interest (six percent on the $14,000 interest liability).

Cases subsequent to *Stahl* have also awarded interest based upon equitable principles. *Fuller v. Phillips Petroleum Co.*, 408 F. Supp. 643, 646 (N.D. Tex. 1976) (Phillips liable as a distributor to the gas producer for interest on money it held and used for its own corporate purposes); *MCZ, Inc. v. Smith*, 707 S.W.2d 672 (Tex. App. 1986) (court can award prejudgment interest based upon equity for compensation of another's use of his funds); *Gulf Const. Co., Inc. v. Self*, 676 S.W.2d 624 (Tex. App. 1984) (prejudgment interest can be awarded as damages under equitable principles); *Behring Intern. v. Greater Houston Bank*, 662 S.W.2d 642 (Tex. App. 1983) (court may elect to fix prejudgment interest rate by using equitable principles or statutory method); *Standard Fire Ins. Co. v. Fraiman*, 588 S.W.2d 681 (Tex. Civ. App. 1979) (insurance company retained money that should have been paid to insured and court held insurance company should not be unjustly enriched).

Phillips argues several points to show why, under Texas law, it is not liable for the interest on the suspended royalties. (These arguments were rejected by this Kansas court in *Shutts II*.)

First, Phillips argues that under its casinghead gas contract, it is a purchaser rather than a producer of gas, and, therefore, it pays royalties only when so ordered by the producer of the gas. Phillips relies on the following contract provision:

"For the account and on behalf of Seller, Buyer agrees to disburse such royalties, overriding royalties, bonus payments and production payments, as Seller shall from time to time direct, accruing from the production and sale of gas hereunder. Buyer shall deduct such payments from the amounts due Seller hereunder. Seller agrees to indemnify and hold Buyer harmless from loss and damages resulting from payments made pursuant to Seller's direction. Notwithstanding, Seller may elect initially to make all payments accruing from the production and sale of gas hereunder to the owners of all royalties, overriding royalties, bonus payments and production payments and to hold Buyer harmless therefrom in which event Buyer shall have no obligation with respect to disbursement of such payments as first above provided."

Therefore, Phillips argues, the royalty owners should be seeking recovery of interest from the producer, rather than Phillips, upon a showing that Phillips did not distribute the monies as instructed by the producer. To bolster this argument, Phillips cites *Exxon Corp. v. Middleton*, 613 S.W.2d 240 (Tex. 1981), where the Texas Supreme Court wrestled with a clause in a lease agreement whereby royalties paid would be based on the market value of the gas "sold off" certain leases. Exxon argued the effective date on which the gas was "sold" was when Exxon's long-term gas contracts became effective. The court found the gas was sold when it was delivered. The court recognized that the transaction involved two agreements, the lease agreement and the gas contract, and stated Exxon's royalty obligations were determined by the lease agreements which required royalties of one-eighth of the market value of gas when delivered. The lease agreements were made independent of, and were unaffected by, the gas contracts. 613 S.W.2d at 245.

Phillips' argument on this point, that it was a purchaser and not a producer, lacks merit for two reasons. First, it is noted that in a news release dated March 20, 1975, Phillips had apparently agreed to make royalty payments for its producers:

"—Phillips Petroleum Company has announced the following policy regarding payments to producers from whom it purchases gas under percentage of proceeds type contracts executed on or after January 1, 1973, and to royalty owners to whom it makes payments for gas produced from wells commenced on or after January 1, 1973, or from wells drilled prior to January 1, 1973, and said gas sold pursuant to contracts executed on or after January 1, 1973, based upon Phillips resale rates authorized by the Federal Power Commission's Opinion No. 699, as amended."

Additionally, in Phillips' answers to interrogatories, it indi-

cated it had accepted the responsibility of the producers' royalty owners; Phillips was asked how many class members had contractually released Phillips from liability for interest, and Phillips answered: "The total number is unknown at this time. Phillips has not yet determined all of the producers, and through them, the royalty owners involved."

In any event, by agreeing to pay the royalty owners of the producers, Phillips would again be retaining the suspended royalties and *using* those funds until the ultimate distribution was made on behalf of the producers. Therefore, under these circumstances, it makes no difference that Phillips was the purchaser and not the producer under the gas contracts.

Next, Phillips argues that a special set of gas purchase contracts existed which included a "without interest" clause, as follows:

"The price per Mcf. that buyer receives under the 'sales contract' is, or may be, subject to regulation by the Federal Power Commission. The phrase 'price per Mcf. that buyer receives,' as used in this contract, shall mean only that portion of the price exclusive of any tax reimbursement then being collected by buyer under the sales contract which is not subject to possible future refund by buyer. If buyer is later determined to be entitled to retain all or part of any amount collected subject to refund and is relieved from all further obligation to refund with respect thereto, buyer shall retroactively recalculate the price payable hereunder and shall pay seller the difference, *without interest*, between the amount previously paid seller hereunder and the amount which would have been payable based on the price which buyer is so permitted to retain." (Emphasis added.)

Phillips argues that because the contract allowed it to recalculate retroactively the money due to the seller, the money Phillips was holding belonged to Phillips and no unjust enrichment can be found. Phillips cites *Stahl* as approving this method to avoid liability for interest. However, the court in *Stahl* recognized that the gas purchase contract was subject to valid federal laws and regulations. The alternative suggested by the Texas Supreme Court did not include a "without interest" clause which is contrary to federal laws which require the payment of interest. Under its corporate undertaking, Phillips agreed to comply with the refunding provisions of 18 C.F.R. § 154.102 (1986), which sets forth the interest rates applicable to refunds. The alternatives did not suggest anything contrary to federal law, but sug-

gested ways to pay producers while waiting for FPC approval. These alternatives do not vitiate any interest on the refunds:

"On the contrary, the Court recognized that the contract was subject to valid federal laws and regulations. Since any portion of the increased prices received by Phillips was subject to refund, with interest, to its purchasers if finally disapproved by the FPC, it follows as a matter of law that any portion of the 'refundable money' which had been paid to Stahl under its contract was likewise subject to reimbursement with interest to Phillips. Thus, if Phillips had made its monthly payments to Stahl based on its percentage of the weighted average 'price received' by Phillips during all of the years pending FPC action, the only amount necessary to be ascertained as between Stahl and Phillips after the FPC opinion became final on October 30, 1972, would have been the portion of Stahl's payments which were refundable *with interest*, to Phillips. Only the 'sustainable' remainder would have been retainable by Stahl, and having been paid when due, there would have been no issue concerning interest.

"Phillips' concern over this literal interpretation of the unambiguous terms of the contract is understandable, but Phillips prepared the contract. It knew that its receipts from interstate sales were subject to regulation by the FPC. It would have been a simple matter for the contract to have provided that increased prices from interstate sales would not be figured in the 'weighted average price received' until after approval by the FPC, if that had been the intention of the parties. Or, it could have been provided that the percentage of monthly payments based on unapproved interstate price increases would be withheld unless Stahl indemnified Phillips by a surety bond or other guarantee that Stahl would refund to Phillips, with interest, any portion of its payments attributable to price increases which were subsequently disapproved by a valid order of the FPC." *Stahl*, 569 S.W.2d at 484.

It does not appear from this language that the Texas court would approve the "without interest" contracts which are contrary to federal regulations.

Next, Phillips argues that as a *user* of the gas, it cannot be held liable for interest. This argument makes very little sense. Phillips argues that as much as 70% of the gas it purchases is used by Phillips itself, and not sold to interstate pipeline companies. Therefore, Phillips argues, because it used the gas rather than sold it, Phillips "did not necessarily make use of another's money, rather Phillips merely suspended payment of a small portion of the purchase price until its final obligation became certain." First, it is noted that under the lease agreement Phillips agreed to pay a royalty on gas "produced . . . and sold or *used* off the premises." Second, the argument that the transaction amounted to nothing more than an unliquidated claim on which

no interest accrues lacks merit and was rejected in *Stahl*, where the court stated the terms of the contract "provided the means for ascertaining the sums due and payable to Stahl each month." 569 S.W.2d at 483. The lease agreements involved here also include such a provision.

Finally, Phillips argues that under Texas law its obligation for interest stopped as of the dates it offered indemnity agreements to the royalty owners. Under the indemnity agreements, Phillips agreed to pay the royalty owners the increased royalties pending FPC approval and, in exchange, the royalty owners agreed to refund to Phillips, with interest, any amount of the increased royalties not approved by the FPC.

In *Phillips Petroleum Company v. Adams*, 513 F.2d 355, Adams had a lease agreement with Phillips. Adams later assigned that lease to Schnell. A dispute developed over whether Schnell or Adams should get the suspended royalties held by Phillips. The court ruled Phillips was liable to Adams under equitable principles of unjust enrichment for interest on the suspended royalties. That interest, however, stopped running as of the date that Phillips, as stakeholder of the funds, offered to pay the suspense money into court even though the funds were not actually paid until some months later. The court cited authority that:

"once a stakeholder makes an *unconditional* offer to give up possession of a disputed fund, it ceases to exert that dominion over the money sufficient to justify an obligation to pay interest thereon, and the rule is that once such an *unconditional* tender is made, any liability for interest ceases as of the date of tender." (Emphasis added.) 513 F.2d at 370.

A similar situation arose in *Phillips Petroleum Co. v. Hazlewood*, 409 F. Supp. 1193 (N.D. Tex. 1975), *aff'd* 534 F.2d 61 (5th Cir. 1976), where Hazlewood assigned his leasehold estate to Alstar Production Corporation. Phillips was holding suspense monies totaling $57,000. Phillips paid that money to Alstar on June 30, 1971, under an agreement that Alstar would repay Phillips the money and indemnify it for any loss, together with interest. Alstar repaid Phillips the money and Phillips deposited the money with the court. The court held, under *Adams*, Phillips' interest obligation to Hazlewood ended as of June 30, 1971, because after that date Phillips no longer had the free use of the money.

In *Fuller v. Phillips Petroleum Co*, 408 F. Supp. 643, Fuller, the producer of the gas, sued Phillips, its distributor, for monies held in suspense by Phillips pending FPC approval. Eventually, Fuller and Phillips entered into an indemnity agreement whereby the Fullers would receive the higher prices and, if the FPC later denied the price increases, the Fullers would refund the same to Phillips with interest. The indemnity agreements were silent on the question of interest Phillips would pay to the Fullers if the price increase was approved. The Fullers sought to recover interest on the funds held by Phillips up to the time that they were paid to the Fullers under the indemnity agreements. Citing *Adams*, the court ruled the Fullers were entitled to payment of interest until the time Phillips lost the reasonably free use of the money—the dates of the indemnity agreements. 408 F. Supp. at 646.

Finally, *Phillips Petroleum v. Riverview Gas Compression Co.*, 409 F. Supp. 486 (N.D. Tex. 1976), involved indemnity agreements between the producers of gas and Phillips, the distributor. Under the agreements, the monies would be paid to the producers, and if the FPC ruling required a refund, then the producers agreed to refund the monies to Phillips together with interest. Consistent with *Adams*, the court ruled that the interest liability ceased when Phillips lost the reasonably free use of the money—the date Phillips offered pay-out. The case was re-manded to determine the dates the offers of indemnity agree-ments were made.

There are two flaws in the analysis of the federal district court in *Riverview*. First, although an offer to pay out has been made, when indemnity agreements are never executed Phillips retains the money and its reasonably free use. Second, the indemnity agreements in both *Riverview* and *Fuller* do not appear to be the *unconditional* type of offer upon which *Adams* is based. Under the indemnity agreements involved in the instant case, the royalty owners would receive an early pay-out only if they agreed to refund the money to Phillips with seven percent interest, or the same rate which Phillips is required to pay by any applicable FPC order, whichever is the higher rate. Addition-ally, the royalty owners or producers had to obtain an acceptable

and irrevocable letter of credit issued by a bank to secure the amount of the refund together with interest. No Texas state court has ruled on this particular situation. However, it does not appear that the offers of the indemnity agreements in this case are *unconditional* offers of pay-out.

To summarize, Texas law would clearly impose liability on Phillips for interest on the suspended royalties based upon equitable principles hereafter more fully discussed. We do not think the Texas Supreme Court would hold the liability for interest ceased as of the date Phillips offered conditional indemnity agreements to its royalty owners when no agreement was executed.

INTEREST RATE

In the *above cases* where liability for interest was accessed, the applicable interest rate was the Texas statutory legal rate of interest, six percent. Tex. Rev. Civ. Stat. Ann. art. 5069-1.03 (Vernon 1971) states:

"When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made."

This statute was amended in 1979 to read as follows:

"When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable."

When there is proof of an oral agreement as to a specific, determinable rate of interest, the transaction is governed by Tex. Rev. Civ. Stat. Ann. art. 5069-1.02 (Vernon 1971), which provides for a maximum interest rate of ten percent. *Moody v. Main Bank of Houston*, 667 S.W.2d 613 (Tex. App. 1984).

No Texas court ever mentioned the higher rates set by federal regulations to which Phillips had agreed to comply in its corporate undertaking. See *Phillips Petroleum Company v. Adams*, 513 F.2d 355 (5th Cir. 1975), *cert. denied* 423 U.S. 930 (1979); *Phillips Petroleum Co. v. Hazlewood*, 409 F. Supp. 1193; *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 488 (Tex. 1978). *This issue has not been determined by the Texas Supreme Court.*

Post-judgment interest, or interest on the interest, was awarded at the rate of six percent in *Fuller v. Phillips Petroleum Co.*, 408 F. Supp. 643, 648 (N.D. Tex. 1976).

## OKLAHOMA

LIABILITY

There are no Oklahoma cases involving liability for interest on suspended royalties. However, in *West Edmond Hunton Lime Unit v. Young*, 325 P.2d 1047 (Okla. 1958), royalty owners sued a unit organization for failing to get the highest prices for oil produced. Under the plan, the unit was the agent and trustee of all royalty owners and had a duty to sell all royalty oil for the highest market value or posted price. The Oklahoma Supreme Court ruled that, based upon principles of equity and the Oklahoma statute requiring prejudgment interest on liquidated claims, the royalty owners were entitled to the difference between what the oil was sold for and the highest available price. Prejudgment interest on that amount was assessed from the last day of the sale of the oil for less than the highest available price. 325 P.2d at 1052.

Additionally, in *First Nat. Bank v. Iowa Beef Processors*, 626 F.2d 764 (10th Cir. 1980), prejudgment interest was awarded in a situation where one party had the use of another's money. There, Wheatheart owed IBP money from a dishonored check, and IBP owed Wheatheart money for cattle purchased. Wheatheart declared bankruptcy before IBP paid for the cattle, and IBP never paid anyone for the cattle. The bank had a security interest in the cattle and IBP's claim of setoff for the dishonored check was in conflict with the bank's security interest. The court first ruled the bank had priority over IBP. Second, the court ruled the bank had a right to proceed against IBP for the amount due on the cattle purchased together with interest. The court stated "[t]his result is not unfair to IBP; it had the use of the money during all of this time." 626 F.2d at 771. See *Rendezvous Trails of America, Inc. v. Ayers*, 612 P.2d 1384, 1385 (Okla. App. 1980), where it is stated the traditional marketplace function of interest is to compensate another for the use of his money.

Phillips cites the Oklahoma statute concerning the statutory

rate of interest as authority that Phillips cannot be held liable for interest under Oklahoma law. Okla. Stat. tit. 23, § 6 (1981), provides as follows:

"Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

Phillips argues "prejudgment interest would not accrue on Phillips' obligation to pay suspended royalties since, until final approval of an increased FPC price that would justify payment of those suspended royalties, the amount of the ultimate obligation is not capable of being determined."

There is no Oklahoma case addressing the issue of whether claims for suspended royalties are unliquidated claims. However, a survey of Oklahoma law shows where Oklahoma courts have drawn the line as to certainty for damages in order to recover prejudgment interest. In cases where the court must make a determination of an object's market value, or the amount of damages involved, the damages have been ruled unliquidated and prejudgment interest is denied. *Jesko v. American-First Title & Tr. Co.*, 603 F.2d 815 (10th Cir. 1979) (in a suit against a title insurer for failure to defend title, the insured was not entitled to prejudgment interest based on loss of one-third of insured's land since the extent of such loss was not mathematically ascertainable until the court placed a value on the land); *Liberty Nat. Bank & Tr. Co. of Okl. City v. Acme Tool*, 540 F.2d 1375 (10th Cir. 1976) (involving the negligent conduct of a sale by a bank, damages were not certain because determination of market value of property to be sold had to be made); *Wilshire Oil Co. of Texas v. Riffe*, 406 F.2d 1061 (10th Cir.), *cert. denied* 396 U.S. 843 (1969) (corporation sued former corporate officer for profits made while officer participated in competitive enterprises, damages held to be unliquidated); *Sandpiper North Apartments v. Am. Nat. Bank*, 680 P.2d 983 (Okla. 1984) (contractor sued subcontractor's bank for misapplication of funds of progress payments contractor made to subcontractor; no prejudgment interest awarded because the amount of the fund involved was unknown until judgment was entered).

However, as to claims arising under contracts, express or implied, the rule that prejudgment interest is denied on unliquidated damages has been modified. See Note, *Prejudgment Interest in Oklahoma*, 34 Okla. L. Rev. 643 (1981). In *Frankfurt v. Bunn*, 408 P.2d 785 (Okla. 1965), the court ruled that where the amount sued for was capable of ascertainment by computation, even though the amount is unliquidated, prejudgment interest will not be denied. *Frankfurt* involved an action for recovery of money under an oral contract for electrical work and materials furnished by the plaintiff in repairing the defendant's hotel. The oral contract provided the defendant would "pay along on his bill" as the work progressed, and the court ruled the damages were ascertainable by computation. See also *First Nat. Bank v. Iowa Beef Processors*, 626 F.2d at 770 ("Almost any lawsuit involves some dispute over defendant's liability. As to the sum certain aspect, the correct inquiry is whether 'the amount sued for' can be ascertained prior to judgment.")

The rule regarding prejudgment interest is also given flexible treatment. In *Robberson Steel Co. v. Harrell*, 177 F.2d 12 (10th Cir. 1949), it was stated:

"It is the general rule of law in Oklahoma that interest on an unliquidated account or claim is not recoverable until the amount due is fixed by judgment. (Citations omitted.) But compensation is a fundamental principle of damages, whether the action be in contract or tort; and one who fails to perform his contract is justly bound to make good all damages which naturally and reasonably accrue from the breach. And while generally interest is not allowed upon unliquidated damages prior to the entry of judgment, the court may in the exercise of a sound discretion include interest or its equivalent as an element of damages when it is necessary in order to arrive at fair compensation." 177 F.2d at 17.

Here, although the *specific* amount of royalties due is not known until the FPC grants final approval of the rate increases, Phillips is aware that the amount due will be in the range between the price increases it requested and the prices actually being collected. If the Oklahoma courts were faced with this issue, having no Oklahoma precedent on point, they would probably look to see how other jurisdictions have ruled. It should be noted that the Texas Supreme Court rejected an argument made by Phillips in *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, that the sum payable under the contract was not ascertainable until the FPC granted final approval. The

Oklahoma Supreme Court cited with approval the rationale of the Texas Court of Appeals, holding the sum due was ascertainable:

" 'At the time the contract was executed, Phillips, as permitted during the pendency of its applications for increases in the interstate commerce rates for its gas sales, was receiving from its purchasers and accepting as payment for its gas an amount of money in excess of the then established rates. Albeit the excess was subject to possible refund, none of the excess was contractually excluded from the "price received" by Phillips and on which payment to Stahl was contractually based. Phillips candidly concedes that neither statutory or decisional law nor the rules and regulations of the Federal Power Commission prohibit Phillips from including the excess in the amount on which calculation of payment to Stahl was made. It naturally follows that the portion of the prices exceeding the then approved interstate commerce rate received by Phillips from its gas sales in the Panhandle Field was, under the plain meaning of the language of the contract, a part of the "price received" on which the month-by-month payments to Stahl were to be based. Hence, within the meaning of the statute, the written contract is one ascertaining the sum payable, and interest is allowable on each unpaid sum which was due and payable monthly under the contract. And there is nothing in the contract to alter this legal consequence even though it later developed that Phillips was required to refund to its purchasers a portion of the purchase prices it has received.' 550 S.W.2d at 366-67." 569 S.W.2d at 484.

Next, Phillips makes the same argument that because Phillips was a *purchaser*, it cannot be held liable for interest. This time Phillips relies on *Tara Petroleum Corp. v. Hughey*, 630 P.2d 1269 (Okla. 1981). There, Tara, the lessee, assigned the lease to Brown, who assigned it to Wilcoy. Wilcoy, as producer and seller, entered into a gas purchase contract with Jarrett Oil Company, buyer. Although the contract required Wilcoy to pay royalties, Jarrett made the actual royalty payments. Jarrett then turned around and sold the gas to El Paso Natural Gas under a contract which allowed Jarrett to get the FPC ceiling price. Jarrett was selling the gas at a higher price to El Paso than the price it was paying Wilcoy. The royalty owners sued for additional royalties, arguing their royalties should be measured by the price El Paso paid Jarrett, rather than the contract price Jarrett paid Wilcoy. The court ruled that as long as the contract between Jarrett and Wilcoy was reasonable when entered into, Wilcoy was not responsible for the additional royalties. The court also stated that neither Jarrett nor Tara was responsible for the additional royalties because, when the producer is not re-

sponsible for the additional royalties, the lessors are not entitled to additional royalties from any other party. The royalty owners argued under equity that Tara and Jarrett should not profit to the detriment of the royalty owners, asserting the two organizations were owned by the same men. The court stated that "[w]henever a lessee or assignee is paying royalty on one price, but on resale *a related entity* is obtaining a higher price, the lessors are entitled to their royalty share of the higher price. The key is common control of the two entities." (Emphasis added.) 630 P.2d at 1275. However, the royalty owners failed to show the common control and were denied the additional royalties.

In the above case, the producers were not liable for the additional royalties because the gas purchase contract they had entered into with Jarrett was reasonable. And, because the producers were not liable, the purchaser, Jarrett, was not liable. Here, in the instant case, are the producers liable to the royalty owners? If yes, then the purchaser would also be liable. Under the casinghead gas contract, the producer/seller had an agreement with Phillips, as purchaser, that the price paid by Phillips to the producer was set out in the "sales contract." The casinghead gas contract included the "without interest" clause previously referred to in this opinion. In that clause, it is noted that the price Phillips receives is subject to FPC regulation. On this point the Oklahoma Supreme Court would undoubtedly follow Texas and hold the gas purchase contract was subject to valid federal laws and regulations. *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W. 2d 480.

Next, Phillips argues that under Okla. Stat. tit. 15, § 264A (1981), which defines interest as "the compensation allowed for the use or forbearance or detention of money, or its equivalent," Phillips cannot be liable for interest. This argument has been previously discussed. Phillips contends that a significant amount of gas produced or purchased by Phillips was *used* by Phillips and, as a user, Phillips was not holding money belonging to someone else. For the reasons previously discussed, this argument is without merit.

Finally, Phillips argues that under Okla. Stat. tit. 23, § 8 (1981), Phillips is not liable for interest. That statute provides "[a]ccepting payment of the whole principal, as such, waives all

claim to interest." Phillips contends that, because the royalty owners accepted the principal amounts due as a result of the FPC order, they are prevented from seeking interest. Phillips relies on *Webster Drilling Co. v. Sterling Oil of Oklahoma, Inc.,* 376 P.2d 236 (Okla. 1962). There, Webster drilled an oil well for Sterling and billed Sterling. Sterling made partial payments, leaving $12,000 unpaid. Over a year after the sum was due, Webster sent Sterling a bill for the $12,000 plus interest. A year later, Sterling paid the $12,000 and Webster sued to recover the interest. Webster asserted it was an accepted custom in the industry that amounts due under contracts would bear interest at the rate of six percent until paid. Webster was suing to recover money which Sterling had agreed to pay. Webster was not seeking interest as damages for the breach of an obligation to pay money. The court ruled Webster's cause of action was not an action for interest, but was for an "account stated" (defined as arising "where there have been transactions between debtor and creditor resulting in the creation of matured debts and the parties by agreement compute a balance which the debtor promises to pay and the creditor promises to accept in full payment for the items of the account," Black's Law Dictionary 17 [5th ed. 1979]). Therefore, Webster's suit was based upon a new and independent obligation which rested upon the new agreement of the parties, express or implied, that Sterling would pay Webster the $12,000 plus interest. Thus, Okla. Stat. tit. 23, § 8 (1981) did not bar Webster's suit.

Here, Phillips agreed in its corporate undertaking with the FPC that it would comply with the requirements of 18 C.F.R. § 154.102 (1986), which sets forth the applicable rates of interest to refundable monies held in suspense. Additionally, it is noted that in the indemnity agreements Phillips offered to its royalty owners and producers this requirement under the corporate undertaking is mentioned:

"From time to time and by various orders issued since June 7, 1954, the Federal Power Commission (FPC) has suspended increases in price for sales of gas filed by Phillips and has permitted such increases to be collected, beginning at some date subsequent to the original date proposed by Phillips, *only upon Phillips filing a corporate undertaking with the FPC to refund all or any portion of such increase which the FPC may find not to have been justified, together*

*with interest at the rate prescribed by the FPC.* It is expected that future increase in price for the sale of gas may also be suspended and collection of such increases permitted only upon Phillips filing a similar undertaking." (Emphasis added.)

The Oklahoma courts would probably view the above as similar to an industry practice whereby a new obligation is created at the time of payment, similar to the circumstances in *Webster,* and Okla. Stat. tit. 23, § 8 (1981) would not bar recovery by the royalty owners.

Furthermore, Oklahoma has adopted the United States rule, discussed more fully later in this opinion, on partial payment of an interest-bearing debt. *Landess v. State,* 335 P.2d 1077, 1079 (Okla. 1958).

To summarize, the Oklahoma courts have not ruled on the issues presented in this case. However, the Oklahoma Court of Appeals has recognized that the function of interest is to compensate another for the use of his money, and the Fifth Circuit has awarded prejudgment interest where one party has had the use of another's money. Prejudgment interest, by statute, is awarded where the damages are certain or are ascertainable by mere calculation, as here.

INTEREST RATE

Okla. Stat. tit. 15, § 266 (1981) provides as follows:

"The legal rate of interest shall be six percent (6%) in the absence of any contract as to the rate of interest, and by contract the parties may agree to any rate as may be authorized by law, now in effect or hereinafter enacted."

In the above cases where interest was awarded, the applicable rate was six percent. However, in *First Nat. Bank v. Cit. & So. Bank,* 651 F.2d 696 (10th Cir.1981), applying Oklahoma law, a federal circuit court awarded interest at the rate of ten percent as provided in the promissory note and rejected the argument that the interest must be limited to Oklahoma's legal rate of six percent. Therefore, in equity, the corporate undertaking entered into by Phillips and the FPC would probably be viewed by implication as contractual by the Oklahoma courts and the rates required in 18 C.F.R. § 154.102 (1986) would be imposed, rather than the statutory six percent.

LOUISIANA

LIABILITY

Phillips relies on *Whitehall Oil Company v. Boagni*, 217 So. 2d 707 (La. App. 1968), *modified* 217 So. 2d 716 (1969) (party substituted), to support its argument that under Louisiana law Phillips is not liable for interest. There, the lessees of oil and gas leases were granted authority by the FPC to sell gas to pipeline purchasers at a price of 23.25 cents per 1,000 cubic feet (Mcf). This was conditioned on the lessees' agreement to refund to the pipeline purchasers any difference between the 23.25 cents price and the price finally approved by the FPC, plus seven percent interest. The lessee (plaintiff Whitehall) paid royalties to the lessors (defendants royalty owners) based upon this higher rate of 23.25 cents per Mcf. The lessors were never informed, however, that if the FPC denied the rate increase, the royalty owners would be required to refund to the lessee the difference between the 23.25 cents and the price approved.

The FPC approved a price at 20 cents per Mcf. The lessee then refunded the difference to the pipeline purchasers and demanded reimbursement from the royalty owners. The royalty owners refused to pay and the lessee filed suit relying on the equitable principles of unjust enrichment and a code provision dealing with "Payment of a Thing Not Due." La. Civ. Code Ann. art. 2301 (West 1979). Under the statute, if the payments to the royalty owners were not due under the lease agreement, Whitehall could recover the overpayment. It was found that the payments were not due. As to the equity argument, Whitehall argued it had to make the overpayment of royalties based on the price fixed by the FPC in order to protect its leases. Therefore, it argued, as the payments were made under business duress, the royalty owners should not be allowed to retain them under principles of equity. The Court of Appeals ruled that equity favored Whitehall. The court noted the overpayments were not large sums, and defendants had failed to show how they would be injured by their refund. Whitehall also argued it was entitled to a refund of both principal and interest which it had to pay to the *pipeline purchasers.* The court denied such interest without much comment. The court also rejected the lessors' argument that forcing them to refund the overpayment to Whitehall resulted in the price being uncertain and violated the lease. The court ruled the action was based on a quasi-contractual obliga-

tion, *i.e.*, that a payment made which was not due can be recovered based upon the rationale that every payment presupposes a debt. Post-judgment interest was awarded to Whitehall, although the opinion does not indicate the interest rate.

The Louisiana Supreme Court granted certiorari in *Whitehall Oil Company v. Boagni*, 255 La. 67, 229 So. 2d 702 (1969). Responding to the lessors' arguments that the statutory provisions of "Payment of a Thing Not Due" were inapplicable, the court stated that, because the lease contract was silent on the issue of overpayments, *equity would decide the case.* 255 La. at 73-74. It was stated the royalty owners would be unjustly enriched at the expense of Whitehall if they were allowed to retain the overpayments. The court ruled Whitehall had no obligation to withhold part of the payments, or place the amounts in escrow, or file a concursus proceeding because "the proper amounts to be paid by [Whitehall] to the [royalty owners] *was not known and could not be determined* until such time as the Commission fixed the fair market value in its permanent rate authorization." 255 La. at 76. Phillips argues that here, as above, the amount in question is not certain until final approval by the FPC and, therefore, Phillips is not liable for interest.

Louisiana law is confusing on this issue. *Hicks v. Rucker Pharmacal Co., Inc.*, 367 So. 2d 399 (La. App. 1978), *writ denied* 369 So. 2d 1360 (La. 1979), relied on by Phillips, stated that all debts bear interest from the time they become due; an unliquidated claim, however, becomes due at the time it is ascertainable.

In *Wurzlow v. Placid Oil Company*, 279 So. 2d 749 (La. App. 1973), interest was allowed on an unliquidated claim from the date the defendant received the funds, rather than from the date of judgment (the ascertainable date). There, a declaratory action was brought by an oil and gas broker and his assignees to be recognized as owners of an overriding royalty interest. The court reviewed Louisiana law regarding interest on unliquidated debts and noted a Louisiana Supreme Court case which had reviewed the statutory changes and had stated:

" 'It is obvious that both changes indicate an intention that interest shall be allowed on unliquidated, as well as on liquidated, claims, and that interest shall commence to run at the time the debt becomes due, regardless of putting in

*default.' "* (Emphasis in original.) 279 So. 2d at 773 (quoting *Friede v. Myles Salt Co.*, 177 So. 105 [La. App. 1937]).

Therefore, in Louisiana, interest does run on an unliquidated debt once the debt is ascertainable.

Phillips also relies on *Alexander v. Burroughs Corp.*, 359 So. 2d 607 (La. 1978), for the proposition that interest on a debt becomes due and payable only on the date it becomes liquid and ascertainable. *Alexander* involved a redhibitory action. Peerless, a company, had purchased a computer from Burroughs. The purchase was financed by General Electric Credit Corporation (GECC). The computer never operated properly and cost Peerless a substantial amount of money and time because employees had to double-check the computer's work. One of the items the receiver of Peerless sought to recover (Peerless had declared bankruptcy) was the finance charge of $5,100 Peerless had paid on the $17,000 loan from GECC. The Louisiana Court of Appeals ruled that the $5,100 was not recoverable because, under the transaction, Burroughs got the use of the purchase price at the same time that Peerless got the use of the computer. The Louisiana Supreme Court, however, disagreed and found that Burroughs was liable for the $5,100 "interest" because the use of the computer did not bring any value to Peerless.

Certain language in *Alexander* has been questioned. There, it was stated:

"The decisions involving interest on sums recovered by suit are naturally myriad and because of their great number, if for no other reason, inconsistent. There is, however, a thread of consistency among the cases. Article 554, of the Louisiana Code of Practice of 1825 provided that interest should not run on accounts or unliquidated claims, but was repealed by La. Acts 1839, No. 53 § 1. This Court once commented,

" 'We have uniformly held that, since the passage of that act, all sums due on contracts bear interest *from judicial demand,* even where none has been stipulated, and the demand is unliquidated.' *Sullivan v. Williams,* 2 La. Ann. 876, 878 (1847).

See also *Petrie v. Wofford,* 3 La. Ann. 562 (1848); *Calhoun v. Louisiana Materials Co.*, 206 So. 2d 147, 151-52 (4th Cir. 1968), writ denied, 251 La. 1050, 208 So. 2d 324 (1968); *Friede v. Myles Salt Co.*, 177 So. 105, 108 (Orl. La. App. 1937)." (Emphasis added.) 359 So. 2d at 613.

The later case of *Meeks v. Huntington School, Inc.*, 489 So. 2d 435 (La. App. 1986), questioning the above language, involved

La. Civ. Code Ann. art. 2000 (West 1987 Supp.), which replaced La. Civ. Code Ann. art. 1938 (West 1977). The new statute provided:

"When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum *from the time it is due*, at the rate agreed by the parties or, in the absence of agreement, at the rate of twelve percent per annum." (Emphasis added.)

The question was whether the interest ran from the due date or the date of judgment. The court did not agree with the above-cited passage from *Alexander* that interest ran from the date of judicial demand, and it distinguished *Alexander* on the basis that it was a redhibitory action, while the case before it was a contract case. In *Meeks,* a former principal sued the school to recover salary due under his contract. No argument was made that the amount was unliquidated. Meeks recovered legal interest on each salary payment as it became due, rather than from the date of judicial demand.

Next, Phillips argues *Boutte v. Chevron Oil Company,* 316 F. Supp. 524 (E.D. La. 1970), *aff'd* 442 F.2d 1337 (5th Cir. 1971), *is* contrary to *Whitehall.* In *Boutte,* lessors filed a class action suit to set aside a mineral lease held by Chevron. One of the reasons to set aside the lease, asserted by the lessors, was that Chevron had failed to pay royalties as required by the lease. In its findings of fact the court stated:

"Chevron applied to the FPC for approval of an increased rate of 23.675 cents and, on June 4, 1959, the FPC entered an order permitting the increased rate to become effective April 1, 1959, without, however, approving the rate, and subject to the limitation that

" 'Chevron shall, in accordance with its agreement and undertaking, refund at such time and in such amounts to the parties entitled thereto, and in such manner as may be required by final order of the Commission, the portion of the increased rates found by the Commission in this proceeding not justified, *together with interest thereon.*' " (Emphasis in original.) 316 F. Supp. at 527.

Chevron withheld royalties on the increased prices it was receiving pending final FPC approval. This suit was filed prior to, and the case was heard prior to, FPC final approval of rate increases requested by Chevron.

In its conclusions of law, the court ruled Chevron's royalties calculations were correct, *i.e.,* the royalties were calculated by

not including the increased prices received by Chevron pending FPC approval. The court stated:

"A judgment which would impose on Chevron an obligation to pay royalties on that part of the funds received from the sale of gas which is subject to possible refund to pipeline purchasers, before Chevron's refund obligation has been determined by final order of the FPC, would deprive Chevron of its property without due process of law and subject it to a multiplicity of legal actions. Therefore, Chevron's calculation of the payment of royalties to plaintiffs is correct.

"Whitehall Oil Co. v. Boagni is distinguishable on its facts, particularly in view of the fact that the lease in that case provided that:

" 'In any case where Lessee sells gas or plant products of his and Lessor's, Lessor shall receive the same price and terms as Lessee . . . .' " 316 F. Supp. at 531.

It is important to note that the court stated that *if* the FPC granted approval, the royalty owners were entitled to recover interest as set forth by the FPC:

"In the event that the FPC approves the provisionally increased rates or any part thereof, *interest shall be due and payable, at the rate finally adopted by the FPC,* to the royalty owners on the difference between any increase in rate, as finally determined by the FPC, and the amounts previously paid to the royalty owners." (Emphasis added.) 316 F. Supp. at 531.

*Whitehall* and *Boutte* are not contrary in law, but are distinguishable upon their facts. In *Whitehall*, the lessee paid royalties based upon the *increased* rate pending FPC approval as was required in the lease while in *Boutte*, the lessee did not pay royalties upon the increased rate but was withholding royalties until final FPC approval. In *Boutte*, the federal court found that once final approval of the FPC order was granted, interest would be due. In *Whitehall*, the state court found that no interest was due because the amount due was not ascertainable until the FPC gave final approval.

Thus, it appears first that if the royalty owners were required under equity to refund overpayments in *Whitehall*, that same rationale applied here would require Phillips to refund the suspense royalties to the royalty owners and producers involved. The court also found it significant to note in *Whitehall* that the amounts of the refunds were relatively small. Here, the refunds held by Phillips are substantial. Second, the statement in *Whitehall* that no interest would be awarded on unliquidated claims

is no longer the law. Interest is due at the time the unliquidated amount becomes ascertainable. *Hicks v. Rucker Pharmacal Co., Inc.,* 367 So. 2d 399. Third, in *Alexander,* interest was awarded to compensate one for another's use of his money. And fourth, although dicta, the court in *Boutte v. Chevron Oil Company,* 316 F. Supp. 524, recognized the royalty owners' right to interest on suspended royalties under federal regulations.

Next, Phillips again argues that as a *purchaser* of gas, it is not liable for interest. The case relied on by Phillips is *New Orleans Public Service v. United Gas Pipe Line,* 732 F.2d 452 (5th Cir.), *cert denied* 469 U.S. 1019 (1984), where it is stated that, under Louisiana law, to have a *stipulation pour autrui* (a third party beneficiary contract), there must be a benefit to a third party and that benefit cannot be merely incidental to the contract. The benefit must form the condition or consideration of the contract. 732 F.2d at 467.

As to the contract between Phillips, as purchaser, and the producers, whereby Phillips agrees to pay royalties as the producers direct, Phillips relies on the following language from that case:

"Where the promisor's performance is to be made to, and is subject to the control of, the promisee, the Louisiana courts have refused to find a *stipulation pour autrui* despite the fact that the promisor and promisee may have contemplated that the promisor's performance would as a practical matter enable or facilitate the promisee's performance of its obligations to a third party. See *Fontenot v. Marquette Casualty Co,* 258 La. 671, 247 So. 2d 572, 579 (1971) (reinsurance contract); *Oswalt v. Irby Const. Co.,* 424 So. 2d 348, 354 (La. App. 1982) (agreement of grantee in right-of-way deed, where grantor reserved right to grow crops in right-of-way, to pay grantor for any future damage to crops on submittal of bill by grantor, was not *stipulation pour autrui* in favor of grantor's lessee; distinguishing cases in which promisor's agreement to pay is not stated in terms of payment to promise of claims submitted by promisee); *Crowley v. Hermitage Health and Life Ins. Co.,* 391 So. 2d 53 (La. App. 1980) (health and accident insurance policy in which employer is insured, providing for benefits in the event of employee work-related injury to be paid to employer or persons furnishing services to employee, is not *stipulation pour autrui* in favor of employee injured on job). Even when the payments may be directly to the third party, but require the claim of the promisee, a *stipulation pour autrui* has not been found. *Logan v. Hollier* 424 So. 2d 1279, 1282 (La. App. 1982); *Logan v. Hollier,* 699 F.2d 758, 759 (5th Cir. 1983) (per curiam)." 732 F.2d at 468-69.

We find that, under Louisiana law, the *corporate undertaking*

between Phillips and the FPC would be viewed as a *stipulation pour autrui.* In order for Phillips to receive the increased prices, pending FPC approval, Phillips, as consideration, agreed to comply with 18 C.F.R. § 154.102, which sets the applicable interest rates applying equitable principles. The royalty owners and producers would benefit from the agreement.

Next, Phillips cites *Star Elec. Supply v. Fidelity & Deposit Co.,* 354 So. 2d 647 (La. App. 1977), *writ. denied* 356 So. 2d 1011 (La. 1978), and *Waguespack Pratt, Inc. v. de Salvo,* 225 So. 2d 269 (La. App. 1969), *writ refused* 254 La. 846 (1969), for the proposition that Louisiana law would not impose liability upon a person for holding the funds belonging to another. These two cases were concursus proceedings, a form of interpleader action in Louisiana. In both cases, *the money had been deposited into court* and the owner of the money was in dispute. The court ruled the interpleader could not safely pay the money to either party and denied interest on the amount in dispute.

Those cases must be distinguished because here, Phillips did not deposit the money into court and could have paid the suspense royalties to the royalty owners pending FPC approval. The cause of action here is based in contract and, under *Whitehall Oil Company v. Boagni,* 255 La. 67, when the contract is silent concerning the issue in dispute, *equity decides the case.*

Next, Phillips cites *Smith v. Burden Const. Co.,* 379 So. 2d 1135 (La. App. 1980), for the proposition that under Louisiana law there is no legal basis for the recovery of interest as an item of damage. There, an employee's fraud scheme was discovered and the company fired him. The employee sued the company for unpaid wages and vacation pay. The company brought a reconventional demand for losses and expenses incurred by the employee's fraud. One of the company's claims for damages was eleven percent interest. The court stated "[t]here is no legal basis for the recovery of interest as an item of damage." 379 So. 2d at 1138.

*Smith,* however, did not involve an action based on contract. It is important to note that former La. Civ. Code Ann. art. 1938 (West 1977), stated that "[a]ll debts shall bear interest at the rate of seven percent per annum from the time they become due, unless otherwise stipulated." Thus, the statement from *Smith* is misleading.

INTEREST RATE

As previously stated, La. Civ. Code Ann. art. 1938 (West 1977) provided for a legal rate of interest of seven percent on all debts from the time they become due, unless the parties have stipulated otherwise. That statute was replaced with La. Civ. Code Ann. art. 2000 (West 1987 Supp.) which provides for twelve percent interest, effective January 1, 1985. In *Silver v. Nelson,* 610 F. Supp. 505 (E.D. La. 1985), twelve percent interest was assessed as that was the date in effect at the time the obligation matured, even though the seven percent rate of interest was in effect at the time of the judicial demand. Phillips argues that if it is liable for interest under Louisiana law, the rate of seven percent controls rather than the rates required by 18 C.F.R. § 154.102(c) (1986), which provides:

"*Refunds.* (1) Any independent producer that collects rates and charges pursuant to this section shall refund at such times, in such amounts to the persons entitled thereto and in such manner as may be required by final order of the Commission the portion of any increased rates or charges found by the Commission in that proceeding not be justified, together with interest thereon as required in paragraph (c)(2) of this section.

"(2) Interest shall be computed from the date of collection until refunds are made as follows:

"(i) At a rate of seven percent simple interest per annum on all excessive rates or charges held prior to October 10, 1974;

"(ii) At a rate of nine percent simple interest per annum on all excessive rates or charges held between October 10, 1974, and September 30, 1979; and

"(iii)(A) At an average prime rate for each calendar quarter on all excessive rates or charges held (including all interest applicable to such rates or charges) on or after October 1, 1979. . . .

"(B) The interest required to be paid under paragraph (c)(2)(iii)(A) of this section shall be compounded quarterly."

As stated above, these rates run *from the date of collection until the refunds are made.*

Again, in *Boutte v. Chevron Oil Company,* 316 F. Supp. at 531, a Louisiana federal district court stated in dictum that if the FPC granted approval of all or a portion of the price increases requested by Chevron, interest would be due and payable *on the suspended royalties* held by Chevron at the rates established by the FPC. These rates were questioned by an oil company in *United Gas Pipe Line v. Federal Energy Reg. Com'n,* 657 F.2d

790 (5th Cir. 1981). In particular, the average prime rate of interest was challenged, as was the compounding of interest provision. The pipeline company argued it should not have to pay interest on the entire amount of the refund because it did not have use of all the monies subject to refund due to the company's tax obligations. The court stated:

"The problem arises because the Treasury has the use of part of the collection while the Commission decides whether the rates are reasonable. A question arises as to who should pay the time-cost of that money while the Commission makes its decision—the filing company or its customers?

"It follows from what was said before that the burden should be on the company. When a gas company accepts money subject to refund it becomes a stakeholder, and the Commission then determines who owns the stakes. Interest can be required only when it is determined that the money belongs to the consumers. As between passive consumers and active sellers, there seems to be no reason to place this burden on the eventual user, so the Commission's decision in that respect is certainly reasonable. While the result we reach does not depend on it, we agree with the Commission's conclusion that gas companies can avoid this expense by acting prudently in submitting rate requests. We reject the petitioners' suggestion that this is an inappropriate consideration. On the contrary, Congress proscribed even a demand for unreasonable prices, and the return a company earns on unreasonable charges, albeit collected by permission of Congress, cannot control the rate of interest to be paid to consumers." 657 F.2d at 796.

We find Louisiana would apply the FPC rates of interest under equitable principles. *Whitehall Oil Co. v. Boagni*, 225 La. 67. 18 C.F.R. § 154.102 provides interest runs from the date Phillips collected the funds until it made the refunds.

## NEW MEXICO

LIABILITY

New Mexico appellate courts have not been presented a case involving interest liability on suspended royalties. However, in *Shaeffer v. Kelton*, 95 N.M. 182, 619 P.2d 1226 (1980), prejudgment interest was awarded where one party was deprived of the use of his money. A construction contract for the development of property was involved. After the plaintiff had substantially completed the project and was ready to close, the defendant refused to close, saying he wanted out of the deal. The plaintiff sought damages, not based on the contract, but in the form of interest accruing daily on the amount owed to him. The trial court denied the plaintiff interest and the Supreme Court of New Mexico reversed, stating:

"In this case, the plaintiff has not only been unable to discharge a sizeable construction loan, but he has also been forced to make costly interest payments while attempting to locate another willing buyer. *In addition, he has lost the use and earning power of $17,000 of his own funds used to finance the project. Simple interest is allowed as a means of estimating these probable gains and as compensation for their prevention.*" (Emphasis added.) 95 N.M. at 187.

The New Mexico court has ruled that the statute allowing interest at six percent is construed according to the Restatement of Contract § 337 (1932):

"In New Mexico, the allowance of interest is governed by Section 56-8-3, N.M.S.A. 1978, which provides in part that:

"The rate of interest, in the absence of written contract fixing a different rate, shall be six percent per annum, in the following cases:

"A. on money due by contract;

"B. on judgments and decrees for the payment of money when no other rate is expressed.

This Court indicated in *O'Meara v. Commercial Insurance Company*, 71 N.M. 145, 376 P.2d 486 (1962), that the New Mexico statute should be construed according to Restatement, Contracts § 337 (1932), wherein the rule is stated as follows:

"If the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows:

"(a) Where the defendant commits a breach of a contract to pay a definite sum of money, or to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, interest is allowed on the amount of the debt or money value from the time performance was due, after making all the deductions to which the defendant may be entitled.

"(b) Where the contract that is broken is of a kind not specified in Clause (a), interest may be allowed in the discretion of the court, if justice requires it, on the amount that would have been just compensation if it had been paid when performance was due.

"In previous cases, where the amount of damages was not fixed or determinable, this Court applied the rule of subsection (b) and held that the allowance of interest was not mandatory but should be left to the discretion of the trial court." 95 N.M. at 187.

Thus, according to New Mexico law, if the amount involved is not ascertainable under subsection (a) above, then, under subsection (b), the trial court may still award prejudgment interest in the exercise of its discretion. See *Navajo Tribe v. Bank of New*

*Mexico,* 700 F.2d 1285 (10th Cir. 1983) (the award of prejudgment interest is a question of law solely within the sound discretion of the court). Interest is allowable on unliquidated claims which can be calculated, even though the claim is disputed. *Fanderlik-Locke Co. v. United States,* 285 F.2d 939, 948 (10th Cir. 1960).

Again, Phillips argues that as a *purchaser* it is not liable for interest and relies on *Western Farm Bureau Mutual Ins. Co. v. Barela,* 79 N.M. 149, 441 P.2d 47 (1968). This case does not support Phillips' position. The argument that Phillips is a purchaser and therefore owes no interest has no merit for reasons heretofore stated.

## WYOMING

### LIABILITY

There is no Wyoming case law concerning liability for interest on suspended royalties. Phillips relies on *Rissler & McMurray Co. v. Atlantic Richfield Co.,* 559 P.2d 25 (Wyo. 1977), for its argument that, because the amount in question here is unascertainable until the final FPC order, under Wyoming law, no prejudgment interest can be awarded. That case involved a construction contract dispute where the trial court denied prejudgment interest to the prevailing party. The Supreme Court of Wyoming reviewed the history of the statutes authorizing interest in cases where contracts make no such provision. The court noted that, first, interest is recoverable on liquidated claims; however, interest on unliquidated claims is not recoverable until the claim is "readily computable by simple mathematical computation." Second, the court stated the statutory interest rate is "adopted only as a convenient measure of damage for loss of use of money and recognizes the legislative view that money has value beyond its intrinsic worth." 559 P.2d at 31. (See also *Western Plains Service v. Ponderosa Development,* 769 F.2d 654 [10th Cir. 1985], stating interest is compensation paid for use of money.) Ruling that the plaintiff was entitled to recover prejudgment interest, the Wyoming court stated the following:

"Rissler was entitled to the use of money which it had earned on its contract with ARCO from the date it became due; its cause of action accrued at that time. Rissler was also entitled to the use of money to which it is entitled from Certified

from the date it became due. *The use of money has real economic value of which Rissler has been deprived. Money has the ability to reproduce in terms of earning interest.* Withholding interest when inappropriate causes the loss of use of a contractor's capital. Interest is a fact of commercial life. In that sense, *prejudgment interest is necessary to compensate the plaintiff, not only for the amount by which it has suffered damages in the usual sense for breach of contract but also for the loss of use of the money to which it is entitled. ARCO and Certified have gained the use of money which Rissler has lost and to that extent have been unjustly enriched."* (Emphasis added.) 559 P.2d at 32.

The court then ruled that the claim involved was a liquidated claim. The defendant was aware of the plaintiff's prices for paving—$1.75 per square yard, three inches thick—and the contract even included that unit standard. The court stated, "Where there is a standard fixed in the contract, from which the amount earned may be computed, there is a liquidated figure, which should bear interest from the date due." 559 P.2d at 33. The court cautioned, however, that before interest starts to run, the debtor must receive notice of the amount due. 559 P.2d at 34.

Applying these principles to the case before us, we first note that Wyoming would likely recognize Phillips' liability for interest under equitable principles on the use of the money belonging to the royalty owners. However, there are two other conditions to be met: (1) The claim must be liquidated, or if unliquidated, ascertainable by mere mathematical calculation; and (2) Phillips ordinarily should receive notice for the amount due from the royalty owners.

As previously discussed, the Texas courts have rejected the argument that the amount involved here is not ascertainable, but there is no Wyoming case on point. The requirement that the debtor receive notice of the amount due before interest starts to run seems impractical in the situation before us. Here, it is Phillips, the debtor, that notifies the royalty owners it is keeping a portion of their royalties. Those royalties are computed by Phillips and involve a detailed computation not available to the royalty owners. The average royalty owner would find it difficult to arrive mathematically at the sum he or she is owed by Phillips in order to give proper notice. Equitable considerations applied by Wyoming to the facts in this case would not require notice by the royalty owners to Phillips of the amount due.

Next, Phillips argues again that as a *purchaser* it cannot be

held liable for interest because the royalty owners were not parties to the casinghead gas contracts, nor were they third party beneficiaries under those contracts. Phillips relies on *Larsen Sheep Co. v. Sjogren*, 67 Wyo. 447, 226 P.2d 177 (1951), where a partnership sued for specific performance of a contract to convey certain real estate pursuant to an option contained in a lease. The original partnership of three people dissolved and a new partnership consisting of two of the original three partners was formed. The dissolution agreement provided for the lease in question to be assigned to the partner who was leaving. The assignment was never completed; however, the dissolution agreement was orally modified and the old partnership retained the lease. The defendants complained that the written dissolution agreement controlled, but the court rejected that argument, stating:

"As stated in Williams vs. Eggleston, 170 U.S. 304, 18 S. Ct. 617, 619, 42 L. Ed. 1047: 'The parties to a contract are the ones to complain of a breach, and if they are satisfied with the disposition which has been made of it and of all claims under it, a third party has no right to insist that it has been broken.' " 67 Wyo. at 472.

This case involving a partnership dissolution agreement is easily distinguishable from the instant case involving an oil and gas transaction which involves many different parties, and where one party, in fact, can wear many hats. (Phillips is a producer, distributor, and user of gas.) The royalty owners here are not insisting that the contracts made between Phillips and the producers be broken. They merely want to recover from Phillips interest for the use of their suspended royalties held by Phillips as stakeholder and used by Phillips in its business.

INTEREST RATE

Wyo. Stat. Ann. § 40-14-106(e) (1977) provides for a seven percent interest rate if no agreement or statute provides for a different rate. The rate of seven percent was imposed in *Rissler & McMurray Co. v. Atlantic Richfield Co.*, 559 P.2d 25, discussed above.

There is no Wyoming case law to indicate whether the Wyoming courts would recognize the corporate undertaking filed by Phillips with the FPC and impose those rates rather than the rate of seven percent. Under equitable principles, however, Wyo-

ming would look to the law of other states and would apply the FPC rates.

In conclusion, Phillips has not briefed the conflict of laws issue for any jurisdictions other than Texas, Oklahoma, Louisiana, New Mexico, and Wyoming. We construe this to be an abandonment of any claim of error regarding jurisdictions other than the five states enumerated. Accordingly, Kansas law will be construed as applying to the disposition of all jurisdictions other than the five states enumerated.

Five of the six states involved have adopted the United States rule, Wyoming being the one state that has no law on this point. See *Jones v. Nossaman*, 114 Kan. 886, 894, 221 Pac. 271 (1923); *Lambert v. Cronvich*, 373 So. 2d 554, 562 (La. App. 1979); *Savage v. Howell*, 45 N.M. 527, 533, 118 P.2d 1113 (1941); *Landess v. State*, 335 P.2d 1077, 1079 (Okla. 1958); *Community Savings and Loan Association v. Fisher*, 409 S.W.2d 546, 550 (Tex. 1966). According to the United States rule, *in the absence of an agreement* or a statute to the contrary, partial payments to an interest-bearing debt which is due are first applied to the interest due. If the payment exceeds the interest, the surplus goes toward discharging the principal, and the subsequent interest is computed on the remaining principal due. If the payment does not discharge the interest that is due, the balance of interest is not generally added to the principal so as to produce interest. Rather, the interest continues on the former principal until the period when the payments, taken together, exceed the interest due. Then the surplus is applied toward discharging the principal, and the subsequent interest is computed on the remaining principal due. See 45 Am. Jur. 2d, Interest and Usury § 99.

The United States Supreme Court, in remanding this case to Kansas for further consideration in accordance with the law stated therein, has recognized the salient facts controlling this class action as follows:

"Because petitioner sold the gas to its customers in interstate commerce, it was required to secure approval for price increases from what was then the Federal Power Commission, and is now the Federal Energy Regulatory Commission. Under its regulations the Federal Power Commission permitted petitioner to propose and collect tentative higher gas prices, subject to final approval

by the Commission. If the Commission eventually denied petitioner's proposed price increase or reduced the proposed increase, petitioner would have to refund to its customers the difference between the approved price and the higher price charged, plus interest at a rate set by statute. See 18 CFR § 154.102 (1984).

"Although petitioner received higher gas prices pending review by the Commission, petitioner suspended any increase in royalties paid to the royalty owners because the higher price could be subject to recoupment by petitioner's customers. Petitioner agreed to pay the higher royalty *only if the royalty owners would provide petitioner with a bond or indemnity for the increase, plus interest, in case the price increase was not ultimately approved and a refund was due to the customers. Petitioner set the interest rate on the indemnity agreements at the same interest rate the Commission would have required petitioner to refund to its customers.* A small percentage of the royalty owners provided this indemnity and received royalties immediately from the interim price increases; these royalty owners are unimportant to this case.

"The remaining royalty owners received no royalty on the unapproved portion of the prices until the Federal Power Commission approval of those prices became final. Royalties on the unapproved portion of the gas price were suspended three times by petitioner, corresponding to its three proposed price increases in the mid-1970's. In three written opinions the Commission approved all of petitioner's tentative price increases, so petitioner paid to its royalty owners the suspended royalties of $3.7 million in 1976, $4.7 million in 1977, and $2.9 million in 1978. *Petitioner paid no interest to the royalty owners although it had the use of the suspended royalty money for a number of years.*" (Emphasis added.) *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 799-800, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985).

These suspense royalties withheld by Phillips could in no event be retained by Phillips because under federal law it was merely a stakeholder of these funds until the FPC issued its final rulings on Phillips' application for price increases. Then the funds would be distributed either to Phillips' purchasers, from whom Phillips collected the increased price pending FPC approval *together with interest* in accordance with its corporate undertaking in compliance with federal regulations, if a refund was requested, or to the royalty owners. Had the royalty owners complied with *all conditions imposed by Phillips*, they could have received the increased royalty pending FPC approval but *only if* they agreed to pay interest in accordance with the amount specified by the federal regulations if Phillips' price increase was not approved.

After reviewing the law of the five enumerated states in accordance with the proper due process constitutional standard, we find all of the five states enumerated would find interest

payable when the FPC approved the various rate increases because the amount due the royalty owners was then ascertainable or capable of calculation from the facts then available to Phillips.

The *amount* of interest payable on the royalties held in suspense which were not paid to the royalty owners, when the FPC approved Phillips' rate increases, is the only remaining issue presented by this litigation on remand.

Based upon the law of the five enumerated jurisdictions as above reviewed, and upon all of the facts, conditions, and circumstances presented by this case, we find all jurisdictions would apply equitable principles of unjust enrichment to hold Phillips liable for interest on the royalties held in suspense by Phillips as a stakeholder. Under equitable principles, the states would imply an agreement binding Phillips to pay the funds held in suspense to the royalty owners when the FPC approved the respective rate increases sought by Phillips, together with interest at the rates and in accordance with the FPC regulations found in 18 C.F.R. § 154.102 (1986) to the time of judgment herein. These funds held by Phillips as stakeholder originated in federal law and are thoroughly permeated with interest fixed by federal law in the FPC regulations as heretofore set forth in this opinion.

## POST-JUDGMENT INTEREST

When was judgment entered in this case?

Here, the original judgment against Phillips was entered by the district court on May 20, 1983. That decision was affirmed as modified by this court on March 24, 1984. The district court had awarded post-judgment interest at the rate of the average prime rate pursuant to FPC regulations. That award of post-judgment interest was modified by this court to the statutory rate of fifteen percent from the date of judgment until paid. On June 26, 1985, the United States Supreme Court reversed and remanded the holding of this court in *Shutts II* concerning the choice of law issue. On our remand of this case to the district court for compliance with the United States Supreme Court decision, the district court ruled on April 30, 1986, that Phillips was liable for prejudgment interest on the suspended royalties at the FPC rates

up to the time of judgment, and post-judgment interest at fifteen percent on the judgment until paid.

Phillips argues if post-judgment interest is awarded, it should run from April 30, 1986, the date of the new judgment, rather than May 20, 1983, the date of the original judgment.

In *Lippert v. Angle*, 215 Kan. 626, 527 P.2d 1016 (1974), this court addressed the issue of post-judgment interest on a judgment that had been successfully attacked on appeal. It stated:

"[W]here the action of the appellate court can be regarded as a full reversal, the action of the appellate court has the effect of wiping out the original judgment and interest on the new judgment then runs only from the time when the amount of the new judgment is fixed." 215 Kan. at 628.

In *First National Bank v. Bankers Dispatch Corporation*, 221 Kan. 528, 537, 562 P.2d 32 (1977), it was stated:

"Where a money award has been modified on appeal and the only action necessary in the trial court is compliance with the mandate of the appellate court, the majority view is that interest on the award as modified should run from the date of entry of the original judgment. It has been so held regardless of whether the appellate court reduced or increased the original award."

We hold the decision of the United States Supreme Court on the conflict of laws issue constitutes a "full reversal" of the original judgment in this case, which was May 20, 1983. The United States Supreme Court ruled that it was unconstitutional to apply the laws of Kansas to all claims involved. This we construe as vacating the original judgment on the amount of interest due. The Court ruled that on remand the "putative conflicts" in laws asserted by Phillips should be addressed by this court.

On our review of the lower court's decision entered on April 30, 1986, we affirm the ruling as to interest payable on royalties held in suspense to the date of judgment, but reverse the ruling insofar as it applied the Kansas post-judgment interest rate to the states of Texas, Oklahoma, Louisiana, New Mexico, and Wyoming.

Our decision herein, modifying the decision of the district court, requires that post-judgment interest be paid from April 30, 1986.

The following shows the five states' statutory post-judgment interest rates, effective on the date of the new judgment, April

30, 1986, to be applied on remand to the judgment of the royalty owners having leases in these states:

Texas:
Tex. Rev. Civ. Stat. Ann. art. 5069-1.05 (Vernon 1987).
The lesser of the rate specified in the implied contract
(FERC rate); or 18%
Oklahoma:
Okla. Stat. tit. 12 § 727 (1985 Supp.) 15%
Louisiana:
La. Civ. Code Ann. art. 2924 (West 1987 Supp.) 7%
New Mexico:
N.M. Stat. Ann. § 56-8-4 (1986) 15%
Wyoming:
Wyo. Stat. § 1-16-102 (1977) 10%

Accordingly, the interest payable to the royalty owners in this case is the rate of interest set forth in Phillips' corporate undertaking with the FPC from the time Phillips first began holding royalties in suspense to the date of judgment entered by the district court, April 30, 1986, and post-judgment interest for royalty owners having leases in Texas, Oklahoma, Louisiana, New Mexico, and Wyoming at the statutory rates set forth above, and 15% post-judgment interest for royalty owners having leases in Kansas (K.S.A. 1986 Supp. 16-204[c]) and all other jurisdictions.

The judgment of the lower court is affirmed as modified and remanded to calculate the interest due the various plaintiffs in accordance with this opinion and to enter judgment thereon.

ALLEGRUCCI, J., not participating.